## Commonwealth *v.* Kutler, Appellant.

154

Argued March 26, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*Louis Wagner,* with him *Stephen J. McEwen,* for appellant.

*Ernest L. Green, Jr.,* Assistant District Attorney, with him *Raymond R. Start,* District Attorney, and *Joseph E. Pappano,* First Assistant District Attorney, for appellee.

OPINION BY RENO, J., April 14, 1953:

Appellant was convicted of book-making and setting up a gambling establishment, largely upon the testimony of a police officer. His motions in arrest of judgment and for a new trial asserted, for the first time,

that he had been entrapped by the policeman. The court below denied the motions, and appellant reiterates the charge on appeal.

Without objection, the Commonwealth was allowed to show that, in response to complaints received by him, the district attorney initiated an investigation of appellant and his "variety store". State Policeman Todak was detailed for that purpose and testified that he visited appellant at his store, told him that he (Todak) had been informed that he could place a "horse race bet" with appellant, who replied that he took bets and had "connections". Speaking of appellant, Todak testified: "He told me that I was a total stranger to him and he would be crazy to take a bet from me." Nevertheless, after some further conversation, appellant took "two separate horse bets" on races to run that day, for which Todak paid $4, which appellant entered on a "small pad."

On cross-examination Todak testified: "Q. Mr. Todak, didn't Kutler say that he doesn't take any bets? A. That is right, at least five or six times he told me that. Q. He told you that five or six times? A. That is right. Q. And then you said to him, 'Don't you play horses yourself?' and he said, 'Yes, I play my own horses?' A. That is right. . . . Q. It was only after persuasion on your part that he had taken your $4 bet? A. That is right."

In his testimony appellant frankly admitted taking the two bets from Todak. His reason for so doing, he said, was "in order to get rid of him more or less." Appellant further admitted saying to Todak "that he was a stranger and I wouldn't want to do anything for him at all".

Later, on the day of Todak's visit, police officers, armed with a search warrant, searched appellant's premises and found, inter alia, several racing publica-

tions and a small slip of paper, under the counter "right near the cash register", on which was written the names of 3 horses, together with memoranda relating to the race tracks, the numbers of the races, and the amounts of the bets placed thereon.

The evidence amply supported the conviction and the defense of entrapment must be rejected, not only because it was not raised at the trial but principally because the evidence did not create an issue of fact upon that point. *Sorrells v. U. S.,* 287 U. S. 435, 441, 53 S. Ct. 210, 212, which is appellant's chief reliance, clearly delineates the circumstances which differentiate proscribed entrapment from blameless persuasion. Said Mr. Justice HUGHES: "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. . . . A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an *innocent person* the disposition to commit the alleged offense and induce its commission in order that they may prosecute." (Emphasis added.)

In our own case, *Com. v. Wasson,* 42 Pa. Superior Ct. 38, 54, 57, RICE, P. J., reviewed numerous authorities, and concluded: "In general, one who has committed a criminal act is not entitled to be shielded from its consequence merely because he was induced to do so by another." He found an easily discernible distinction between innocent and blameworthy excitations, and laid down the principle: "Again, in considering the question of public policy the clear distinction, founded on principle as well as authority, is to be observed between measures used to entrap a person into crime in order, by making him a criminal, to aid the

instigator in the accomplishment of some corrupt private purpose of his own, and *artifice used to detect persons suspected of being engaged in criminal practices, particularly if such criminal practices vitally affect the public welfare rather than individuals.*" (Emphasis added.)

Applying these principles, it is immediately apparent that the Commonwealth did nothing more than offer appellant an opportunity to commit a crime. True, appellant's initial reluctance was overcome by the officer's repeated requests but his reluctance rested only upon the fact that the officer was a stranger, not upon appellant's disinclination to commit the criminal act for or with some one with whom he was acquainted. The Commonwealth's officers acted in utter good faith. The district attorney instigated the investigation upon the basis of complaints received by him and no evidence questions the honesty of the motives which animated Todak. There was no entrapment and the evidence did not warrant submission of that question to the jury.

Inspired by the *minority* opinion in the *Sorrells* case, appellant argues that the indictment should have been quashed and that subsequently his motion to arrest the judgment should have been sustained. However, when we accept the guidance of the United States Supreme Court we follow its majority, and of course we are bound by the unanimous opinion of this Court in the *Wasson* case; and both deny appellant's proposition. The essential unfairness of appellant's argument is evinced by the fact that his omission to raise the question of entrapment at the trial precluded introduction of the Commonwealth's proof that he had been previously convicted of a similar offense. With this additional evidence in the record it is difficult to imagine an acquittal based upon an entrapment.

Appellant launched a vigorous attack upon the court's charge but it is devoid of merit. After concluding his charge, Judge Bretherick asked: "Are there any errors or corrections, or anything that you want me to say, anything that I omitted to say? A colloquy ensued between appellant's counsel and the trial judge concerning statements contained in the charge and some which counsel wished to have added to it. The trial judge refused the requests for additional instructions and explained several observations included in the charge. Whereupon, appellant's counsel said: "We are all humans. I agree to that. I think your Honor's charge was all right.". After a thorough study of the charge, we concur in the judgment pronounced by appellant's counsel upon it. See *Curley v. Smith & Sons*, 346 Pa. 489, 31 A. 2d 113.

The judgment and sentence are affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.