Commonwealth *v.* Conway, Appellant.

Argued June 12, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Judgment reversed.

Before SWENEY, P. J.

*Joseph A. Damico, Jr.,* with him *Chadwick, Petri-kin, Smithers & Ginsburg,* for appellant.

*Anna R. Iwackiw,* Assistant District Attorney, with her *Domenic D. Jerome,* Assistant District Attorney, *Ralph B. D'Iorio,* First Assistant District Attorney, and *Jacques H. Fox,* District Attorney, for Commonwealth, appellee.

OPINION BY FLOOD, J., September 13, 1961:

This appeal from defendant's conviction of bookmaking is based upon the trial judge's failure to submit the question of entrapment to the jury.

The appellant was a cab driver. The Commonwealth's testimony was that on November 19, 1959, Mrs. Esposito, a county agent, investigating a complaint about horse betting asked another cab driver where she could place a bet. He introduced her to the defendant. The defendant then told her he could get a bet in for her. She gave him $6 to bet on a horse "across the board". He took the money and said he would do so. She gave him additional money which he placed on horses on November 27, December 3, December 10, December 14 and December 30, 1959. Three times the horses came in and he paid her the winnings. On January 6, 1960, he met her and gave her winnings on horses played on December 30th but refused to take another bet, saying that he was scared.

The defendant testified that the first time the agent asked him to take her bet he said he would see if he could find anyone to take it to the track, that he then told her that no one was going to the track and he didn't take her bet; that on another occasion he gave it to someone to take to the track to bet for her and

that at still other times he refused because he was busy; that he told her a couple of times that he was not a bookmaker, that he was busy and didn't have time and she said: "You are a good guy and I know you will do it." He answered "Yes" to a question of his counsel, asking whether she still insisted and coaxed him into taking the bets for her. He testified that she said she was a cab-rider and would request his cab. The agent denied that she said or did these things, but admitted on cross-examination that the defendant said he was going to find someone to give the bets to. She never rode in his cab.

He also testified that only once before had he been convicted of any crime, a crime of violence seventeen years before when he was seventeen years old. No testimony was submitted by the Commonwealth to rebut this.

The defendant requested the court to charge on entrapment. The court charged: "A man may not be heard to say he was tricked into breaking this kind of law . . . defendant will not be heard to state that the offense originated in the minds of the officers, and that but for the suggestion and instruction by the officers the crime would not have been committed, where the evidence shows that the facts were to the contrary".

If the court meant by this that entrapment is never a defence to a gambling charge, it is an erroneous statement of the law. However, the last phrase "where the facts show to the contrary" indicates that what the trial judge was really saying was that under the testimony here there was not sufficient evidence to warrant a finding of entrapment.

The question then is whether, under the testimony in this case, the defence should have been withdrawn from the jury's consideration.

No new trial is warranted provided the trial judge's interpretation of the testimony is correct. In such

case any error in his language would be harmless error. *Commonwealth v. Kutler*, 173 Pa. Superior Ct. 153, 96 A. 2d 160 (1953). In that case, this court said:

". . . Sorrells v. U. S., 287 U. S. 435, 441, 53 S. Ct. 210, 212 [1932] which is appellant's chief reliance, clearly delineates the circumstances which differentiate proscribed entrapment from blameless persuasion. Said Mr. Justice HUGHES: 'It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises . . . A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an *innocent person* the disposition to commit the alleged offense and induce its commission in order that they may prosecute.'

"In our own case, Com. v. Wasson, 42 Pa. Superior Ct. 38, 54, 57, RICE, P. J., reviewed numerous authorities, and concluded: 'In general, one who has committed a criminal act is not entitled to be shielded from its consequence merely because he was induced to do so by another.' He found an easily discernible distinction between innocent and blameworthy excitations, and laid down the principle: 'Again, in considering the question of public policy the clear distinction, founded on principle as well as authority, is to be observed between measures used to entrap a person into crime in order, by making him a criminal, to aid the instigator in the accomplishment of some corrupt private purpose of his own, and artifice used to detect persons suspected of being engaged in criminal practices, particularly if such criminal practices vitally affect the public welfare rather than individuals.' "

The appellant's principal argument is that there is no evidence that he was ever engaged in gambling activities or had ever been convicted or even arrested or indicted on a gambling charge, whereas in the *Kutler* case there was evidence that complaints had been received against the defendant, that he stated to the police that he took bets and had "connections", and that certain papers found in his store were of the type used in gambling operations. The opinion also indicated that Kutler had been previously convicted of a gambling offence and that this record could have been offered in evidence if the entrapment defence had been raised at the trial.

The question as we see it, in the light of *Commonwealth v. Kutler,* supra, is whether there is evidence here from which the jury could find that the agent implanted in the mind of the innocent defendant the disposition to commit the offence and induced its commission in order that he might be prosecuted. To put it the other way, does the evidence show no more than conduct by the agent which afforded opportunities or facilities for the commission of the offence and was no more than an artifice or stratagem to catch one engaged in a criminal enterprise? If the latter is the case, there is nothing to submit to the jury.

Defendant leans heavily upon the argument that since there was no evidence that defendant had ever before been convicted of or even arrested for a gambling offence the case must be sumitted to the jury on the entrapment issue. Our question is whether the fact that defendant had never been convicted of such an offence, when there is no other evidence that he had been engaged in such activity, raises a jury question where the evidence of police entrapment is no greater than that before us.

In the two leading cases, both in the Supreme Court of the United States, the majority and minority opin-

ions placed the emphasis on different branches of the defence. *Sorrells v. U. S.*, 287 U. S. 435 (1932); *Sherman v. U. S.*, 356 U. S. 369 (1958). The majority in both cases followed the rationale adopted by this court in *Commonwealth v. Kutler,* supra, as set forth in the quotation above from the opinion of Chief Justice HUGHES in *Sorrells v. U. S.*, supra. This focuses upon the innocence of the entrapped defendant. The minority opinion emphasizes not the innocent disposition of the defendant but the seriously improper conduct of the police. Justice FRANKFURTER set forth this view in *Sherman v. U. S.*, supra, at p. 382, as follows:

"The crucial question, not easy of answer, to which the court must direct itself is whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power . . . [T]hey should act in such a manner as is likely to induce to the commission of crime only these persons [who stand ready to break the law when the occasion arises] and not others who would normally avoid crime and through self-struggle resist ordinary temptations."

The two rules were formulated in alternative draft proposals for the Model Penal Code, submitted to the American Law Institute in 1959 (Tentative Draft No. 9) at p. 13, as follows:

"(1) A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense he solicits, encourages or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so.

"Alternative formulation of Subsection (1):

"(1) A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence

of the commission of an offense, he solicits or encourages another person to engage in conduct constituting such offense by either:

"(a)  making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

"(b)  employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it."

Both of these formulations leave real problems for the trial judge. In the first the emphasis is upon the innocent character of the defendant, but nevertheless requires some conduct of the law enforcement officials meriting disapproval before the defence is available. In the other, the emphasis is upon the seriously improper conduct of the police, yet the conduct must be such as to create a risk that a man not disposed to the commission of the crime will be entrapped, although it is available to a defendant who is not of such innocent disposition.

We think that the enlightenment afforded since *Commonwealth v. Kutler,* supra, by the opinion in *Sherman v. U. S.,* supra, the alternative formulations of the American Law Institute's Model Penal Code together with the discussion of the reporter for this code as set forth in Tentative Draft No. 9 of the Institute's Model Penal Code, pp. 13-24,[1] suggests a restatement of the rule laid down in *Commonwealth v. Wasson,* and *Commonwealth v. Kutler,* supra, and followed in *Commonwealth v. Werner,* 188 Pa. Superior. Ct. 509, 149 A. 2d 509 (1959).

The defence of entrapment in Pennsylvania, as derived from our cases in the light of the other authorities just mentioned, arises only when a law enforce-

[1] See also the discussion in 73 Harvard L. R. 1333.

ment officer, by employing methods of persuasion or inducement which create a substantial risk that persons not otherwise ready to commit the criminal act will do so, actually induces such a person to commit the act.[2]

This rule requires, before the defence becomes available, (1) a defendant not disposed to commit the crime, and also (2) police conduct likely to entrap the innocently disposed. Unless both elements are present, the defence need not be submitted to the jury. *Commonwealth v. Kutler*, supra.

There is clearly a jury question here as to the first element. The second element is not present in this case under the Commonwealth's testimony. But it may be present under the defendant's testimony, even though we might not find it if we were triers of the fact. In such circumstances, we conclude that this case should have been submitted to the jury.

In a case like this where there is no evidence of the defendant's disposition to commit the crime except the complaint that bets were being taken in the neighborhood by cab drivers and the readiness with which he took the bets, where there is evidence of no previous conviction for such an offence, and the defendant's own evidence suggests that considerable persuasion was used by the law enforcement officer, the defence should be submitted to the jury with proper caution as to its limits as set forth above.

Judgment reversed with a procedendo.

ERVIN and WRIGHT, JJ., would affirm upon the opinion of President Judge SWENEY.

---

[2] Since the offence here is one relating to the public welfare and not one involving harm to the person or property of an individual, we are not required to determine the question left open in *Com. v. Wasson*, supra, whether the defence is available in the latter class of crimes. Cf. A. L. I. Model Penal Code, Tentative Draft No. 9, p. 23.