Commonwealth *v.* Burke, Appellant.

Submitted September 21, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Joseph J. Lombardo* and *Lombardo & Hummer*, for appellant.

*George T. Brubaker*, Assistant District Attorney, and *Clarence C. Newcomer*, District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, November 23, 1971:
Judgment of sentence affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:

This appeal from a conviction for the sale of a narcotic drug raises the issue of whether the trial court properly ruled that the evidence was not sufficient to support the submission of the defense of entrapment to the jury for its consideration.

The undisputed evidence at trial was that a Dennis Goggin was employed by the District Attorney's office of Lancaster County to grow his hair long, "put on a modish, hippy-type outfit and intermingle with a large group of young people from Lancaster who were suspected to be in the use or sale of narcotic drugs." The object was for Goggin to "become friendly sort of with them, go to parties with them and otherwise become an integral part of that group so that [he] could obtain evidence which would be used later to prosecute them." For a period of four and one half months Goggin acted

in this undercover role, and in several instances simulated the taking of drugs so that the group of persons whom he intermingled with believed that he was a drug user. Further, Goggin informed the group of young people that he was a "big dealer" in drugs.

After Goggin had established his undercover role, Robert Van Dorn, the codefendent of appellant, came to Goggin and said that he, Van Dorn, and a group of friends would like to raise bail money to get another friend out of jail. The conversation that ensued is subject to dispute. On cross-examination Goggin stated that the subject of the sale of heroin came up, but that Van Dorn was the first to mention "heroin."

This conflicts with the acknowledged testimony of Goggin at the preliminary hearing, which testimony was read at trial. At the preliminary hearing, Goggin stated that he responded to Van Dorn's statement that he needed money with the suggestion that he, Goggin, knew somebody who was willing to buy some heroin which "you could sell at a profit and get some money to get (Van Dorn's friend) out of jail on bail." Goggin thereafter met with Van Dorn on two more occasions before it was agreed that Van Dorn would obtain heroin. Van Dorn, however, had never dealt before in heroin to the best of Goggin's knowledge.

Goggin then drove Van Dorn and appellant, who was introduced to Goggin as a person who had an alleged contact with a heroin seller in Richmond, Virginia, to that city in Goggin's car. Upon arriving in Richmond, Goggin and his companions went to the residence of two persons. Goggin handed money to Van Dorn who handed it to one of the residents and in return he received back heroin capsules which he transferred to Goggin. There is no testimony that either Van Dorn or appellant profited from this transaction.

Thereafter, Goggin drove appellant and Van Dorn back to Lancaster, Pennsylvania, where all three went

to Goggin's apartment. Waiting for them was a federal undercover narcotics agent, who had previously been contacted by Goggin and who posed as a drug purchaser. Considerable haggling over price took place, and finally Van Dorn sold the heroin to the undercover agent.

At trial, the appellant submitted a point for charge asking that the court instruct the jury that the defense of entrapment may lie.

This point was refused.

In *Commonwealth v. Conway*, 196 Pa. Superior Ct. 97, 173 A. 2d 776 (1961) Judge FLOOD, speaking for our Court, recapitulated the law of entrapment and the right of a defendant to submit the defense to the jury for its consideration.

"The question as we see it . . . is whether there is evidence here from which the jury could find that the agent [police officer] implanted in the mind of the innocent defendant the disposition to commit the offense and induced its commission in order that he might be prosecuted. To put it the other way, does the evidence show no more than conduct by the agent which afforded opportunities or facilities for the commission of the offense and was no more than an artifice or strategem to catch one engaged in a criminal enterprise? If the latter is the case, there is nothing to submit to the jury. . . . The defense of entrapment in Pennsylvania, as derived from our cases in the light of the other authorities just mentioned, arises only when a law enforcement officer, by employing methods of persuasion or inducement which create a substantial risk that persons not otherwise ready to commit the criminal act will do so, actually induces such a person to commit the act.

"The rule requires, before the defense becomes available, (1) a defendant not disposed to commit the crime, and also (2) police conduct likely to entrap the inno-

cently disposed. Unless both elements are present, the defense need not be submitted to the jury." 196 Pa. Superior Ct. at 101, 103-104, 173 A. 2d at 778, 779-780. See also *Commonwealth v. Kutler*, 173 Pa. Superior Ct. 153, 96 A. 2d 160 (1953).

Applying these standards to the facts in the instant case, the jury could have found that appellant, who had no prior record of ever dealing in drugs or otherwise committing a crime, was not disposed to commit the crime of which he was convicted. Instead, the jury may have viewed appellant as becoming involved in an effort to raise bail money for a friend, which effort became a criminal venture only after Officer Goggin implanted in his mind the disposition to commit the offense. By driving the two codefendants a distance of several hundred miles back and forth from Lancaster, Pennsylvania, to Richmond, Virginia, by supplying the funds with which the narcotics were originally bought in Richmond, and then in having a federal agent to which appellant had been brought, the jury could have found that appellant was induced to commit the crime of sale of a norcotic drug by the specific blandishments and strategems of law enforcement officials.

Therefore, the preconditions necessary to submit the defense of entrapment to the jury as set forth in *Conway* were met in the instant case and it was error for the lower court to refuse appellant's point for charge.[1]

---

[1] In his brief before us, appellant also argues that the substance of the law of entrapment as set forth in *Conway* should be modified in light of more recent cases from other jurisdictions and recent constitutional doctrine which emphasizes the exclusion of evidence obtained as a result of obnoxious police tactics, even where the defendant himself may not have been pristine. See *Johnson v. United States*, 317 F. 2d 127 (D.C. Cir. 1963), *United States v. Riley*, 363 F. 2d 955 (2nd Cir. 1966) and *United States v. Owens*, 228 F. Supp. 300 (D.D.C. 1964). It is unnecessary in

I would vacate the judgment of sentence below and order a new trial.

MONTGOMERY and SPAULDING, JJ., join in this dissenting opinion.

---

the instant case, however, to review such law insofar as we have no charge to a jury on entrapment before us. Any conclusions would therefore be made in the abstract and premature.