Commonwealth *v.* Mott, Appellant.

Argued November 14, 1974. Before WATKINS, P. J., HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ. (JACOBS, J., absent).

*John J. Ross*, Public Defender, for appellant.

*Joseph M. Stanichak*, Assistant District Attorney, with him *Joseph S. Walko*, District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 31, 1975:
The six Judges who heard this appeal being equally divided the judgment of sentence is affirmed.

OPINION BY VAN DER VOORT, J., IN SUPPORT OF AFFIRMANCE:
Appeal is taken to this Court from conviction by jury and sentence by the trial court on charges of criminal conspiracy, criminal solicitation and bribery in official matters, these offenses being violations of the Crimes Code, sections 903, 902 and 4701, respectively. The conspiracy, solicitation and bribery related to a charge of conducting a lottery. Appellant's motions in arrest of judgment and for new trial were denied. We affirm by a divided Court.

The appellant claims that the trial judge should have charged the jury on entrapment. The law of entrapment in Pennsylvania is now codified as a part of the Crimes Code,[1] and reads as follows:

"§313.   Entrapment

(a)  General rule. — A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1)  making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2)  employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b)  Burden of proof. — Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment."

The case law of entrapment is discussed at length in *Sherman v. U.S.*, 356 U.S. 369, 372, 78 S. Ct. 819, 821, 2 L.Ed. 2d 848 (1958). In *Sherman,* Chief Justice WARREN, at page 851 states:

"However, the fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law enforcement officials. (Emphasis supplied). See 287 U.S. at 441-451."

---

1.  Act of December 6, 1972, P.L. 1482, No. 334, eff. June 6, 1973;  18 Pa. C.S. §313.

Our Court has discussed entrapment in a number of cases and has stated with respect to such defense that "[t]he test, therefore, is whether criminal design was created by the conduct of public officials, or whether the officials merely created an opportunity which a person already disposed to commit crime sought to exploit." *Commonwealth v. Werner,* 188 Pa. Superior Ct. 509, 512, 149 A.2d 509, 511 (1959). See also *Commonwealth v. Klein,* 222 Pa. Superior Ct. 409, 294 A.2d 815 (1972). The prerequisites to allowing an entrapment defense are dual: a defendant not disposed to commit the crime *and* police conduct which may ensnare the innocent victim. *Commonwealth v. Kutler,* 173 Pa. Superior Ct. 153, 96 A.2d 160 (1963) and *Commonwealth v. Conway,* 196 Pa. Superior Ct. 97, 173 A.2d 776 (1961).

Our statute law requires that a defendant "shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment." In the instant case not only was there lacking proof of entrapment by a preponderance of the evidence, but there was no evidence of entrapment. In this case, the appellant Louis F. Mott, Jr., operated a small news stand and miscellaneous items store near the main gate to the Aliquippa Works of Jones & Laughlin Steel Corporation. In the middle of September, 1973, he was arrested and charged with setting up and conducting a lottery by selling "numbers." A few days later, he went to the tavern operated by Frederick L. Unis. He and Unis discussed his arrest and getting some help for appellant by having James Albert, who was engaged in politics in the community, talk to Rody Maravich, the District Justice of the Peace.[2] James Albert came in to Unis' tavern on September 20, 1973, and Unis asked him if he wouldn't speak

---

2. Unis testified that Mott brought up the matter of getting some help in his case while Mott testified that Unis first broached the subject. Regardless of which one spoke about it first, the result of their conversation was that Unis would contact Albert.

to Rody Maravich about helping Mott with his number's charge. On September 26th, Albert talked to Maravich telling him that Mott had been picked up for numbers and that Mott's friend Unis wanted to talk to Maravich about it. Albert told Maravich that he had better be careful and if syndicated money was mentioned he had better tell them he didn't want to talk to them.

Maravich contacted the State Police and Sergeant Nicklow interviewed Maravich on October 1st. Sergeant Nicklow advised Maravich to meet with Unis and to try and find out the source of the money. On October 2nd, Maravich and Unis met first in the Glass Tower and then in the Allegheny Motor Inn. This meeting was surveilled by State Police Officers and Maravich was provided with a recording device for the purpose of recording the conversation of Unis. Unis told Maravich that Mott wanted help from Maravich and would pay the Magistrate one thousand ($1,000.00) dollars for such help. After this meeting, Maravich met with Nicklow in the early morning hours of October 3rd and turned over to him the tape recording. The following day, on October 4th, Unis called Maravich on the telephone and asked him if one thousand ($1,000.00) dollars was all right, to which Maravich replied that it would be sufficient and Unis arranged to come up to Maravich's office in the evening of October 5th. On the morning of that day, Unis went to appellant's store and was given one thousand ($1,000.00) dollars in twenty ($20.00) dollar bills by the appellant. Unis took this money to the office and turned it over to Maravich. The pay-off was witnessed by Sergeant Nicklow who entered the office after Unis had left and took custody of the one thousand ($1,000.00) dollars.

Before the defense of entrapment is available to a person charged with a criminal offense a public law enforcement official or a person acting in cooperation with such official must induce or encourage another person to engage in criminal conduct by either making false repre-

sentations or employing methods which create a substantial risk that an offense will be committed by another person other than one who is ready to commit it. From the facts in this case, it will be readily seen that neither the police nor Maravich in cooperation with the police did either of these things. There is not a scintilla of evidence that either Maravich or the police made any misrepresentations nor did either of them employ any methods of persuasion or inducement which might have led Mott to bribe the Magistrate. Indeed there was no contact whatsoever between the police and Mott or between Maravich and Mott. The seeds of the crimes of which Mott was found guilty, i.e., criminal conspiracy, bribery in an official matter and solicitation were sown by Unis and Mott well before the police entered the picture.[3] Any conduct that may have influenced Mott other than his own impulses came from Unis, his co-conspirator. One engaged in conspiracy, bribery and solicitation cannot escape criminal responsibility by claiming that his co-defendant improperly influenced him. The gravamen of entrapment is improper conduct of the police or someone working in conjunction with the police. This we do not have here. Our colleagues who would reverse mistakenly state that "with the exception of the initial meeting with Unis at his tavern, the appellant was not involved in any of the activities" constituting the criminal offenses of which he was convicted. This is an incorrect statement of the facts. The appellant, with Unis, not only initiated the plan to corrupt the Magistrate but also it was the appellant who supplied the money to bribe him. There are no more crucial aspects of the crimes involved in this case than those in which the appellant engaged.

It is axiomatic that a court may not declare as a matter of law that a defendant's evidence be believed or disbelieved. *Commonwealth v. Torquato,* 176 Pa. Superior Ct.

---

3. Unis pleaded guilty to criminal conspiracy and testified for the Commonwealth.

138, 107 A.2d 147 (1954). However, "[w]hile it is true that under normal circumstances entrapment is usually a jury question, where the evidence points to only one conclusion the question may be decided as a matter of law, just as any other factual issues admitting of only one conclusion." *U.S. v. Klosterman*, 248 F.2d 191, 195 (3d Cir. 1957). It is our considered opinion that as to entrapment as a defense, appellant's initiatives toward unlawfully influencing the Magistrate to dismiss the pending criminal charges against him foreclose such a defense. Therefore, it is our view that these issues admit solely of this conclusion and that it was correct for the lower court to have decided that, as a matter of law, such defense was not available and should not go to the jury.[4]

I would affirm the judgment of sentence.

WATKINS, P.J., and PRICE, J., join in this opinion.

---

4. Based upon the above, and the lack of evidence substantiating appellant's claim, we do not find applicable *U. S. v. Watson*, 489 F.2d 504, 509 (3d Cir. 1973): "The charge must be given, however unreasonable the judge would consider a verdict in favor of the defendant to be, when the accused shows (1) evidence that the Government initiated the crime, regardless of the amount of pressure applied to the defendant, and (2) any evidence negating the defendant's propensity to commit the crime." The government in no way initiated the crime in the instant case.

---

OPINION BY CERCONE, J., IN SUPPORT OF REVERSAL:

This is an appeal from the denial of appellant's motions in arrest of judgment and for a new trial relating to his conviction of conspiracy, bribery, and solicitation. The only question raised is whether the trial court erred in refusing to charge the jury as to the defense of entrapment.

The law in Pennsylvania as to entrapment is set forth at 18 Pa. C.S. § 313.[1] The relevant portion is as follows:

---

1. Act of Dec. 6, 1972, P.L. 1482, No. 334, §1, eff. June 6, 1973.

"(a) General rule. — A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by

. . . .

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it."[2]

Because the statute clearly states the substantive law as to entrapment, the only question which we must now resolve is when the defense of entrapment should be submitted to the jury. The case of *Commonwealth v. Conway*, 196 Pa. Superior Ct. 97, 104 (1961), addresses the problem as follows:

"This rule requires, before the defence becomes available, (1) a defendant not disposed to commit the crime, and also (2), police conduct likely to entrap the innocently disposed. Unless both elements are present, the defence need not be submitted to the jury. *Commonwealth v. Kutler* [173 Pa. Superior Ct. 153 (1953)]."

Implicit in this rule is that if both elements are present the defense should be submitted to the jury. To ascertain if such elements are present in this case we must by necessity look to the lengthy and conflicting facts of this case.

The appellant was arrested on a "numbers" charge in mid-September, 1973. Returning from work a few days later the appellant stopped in at a tavern owned by Frederick Unis for a few beers. This was not an infrequent occurrence. Unis and the appellant engaged in conversa-

---

2. A general discussion of the law of entrapment which leads to this language can be found in the Comments to the Model Penal Code at Tentative Draft No. 9, pp. 14-24.

tion, as they often did. The appellant related to Unis the details of his arrest and that he was to appear before Magistrate Rody Maravich on a numbers arrest. Appellant testified that Mr. Unis then said, "Mr. Albert[3] comes in for the state lottery once in a while, and if I see him, I'll tell him about your case." Unis told a different story. Unis testified that the appellant asked him if he could get in touch with Albert and have Albert talk to Magistrate Maravich. Unis further testified that the appellant said that he would pay whatever he could. The appellant denied that there was any mention of money during this conversation.

Unis attempted to contact Albert several times by telephone and on Tuesday, September 25, 1973, Albert stopped in at Unis' tavern. Unis testified that he told Albert of the appellant's problem and asked Albert if he could talk to Magistrate Maravich. Albert agreed to talk to Magistrate Maravich and, according to Unis, asked if there was any money involved. Unis said appellant would pay only what he could afford. Albert's testimony as to this meeting is somewhat different. Albert testified that he told Unis that he had to talk to Magistrate Maravich about another matter and that he would tell Magistrate Maravich to get in touch with Unis. Albert denies that there was any mention of money at this meeting.

On the evening of Tuesday, September 25, 1973, Albert called Magistrate Maravich and set up a meeting at Harold's Tavern at 5:30 P.M. on September 26, 1973. Magistrate Maravich was at the bar when Albert arrived and they sat together at a table a short distance from the bar. Magistrate Maravich testified that Albert told him of the appellant's problem and then indicated that if there was anything he could do for the appellant there would be two or three thousand dollars in syndicate money for him. Albert told a different story. He testified

---

3. Mr. James Albert, a State Lottery agent, was a friend of Unis and of Magistrate Maravich.

that he and Magistrate Maravich discussed a problem they were having with the police force. Then he mentioned that Unis had talked to him about the appellant's problem, and if Magistrate Maravich wanted to talk to Unis about it to contact Unis. Albert's testimony does not mention money.

The next morning, Thursday, September 27, 1973, Magistrate Maravich contacted Sergeant Nicklow, who was in charge of the Criminal Investigation Unit, at the Chippewa State Police Barracks and told him of the meeting with Albert. At the instruction of Sergeant Nicklow, Magistrate Maravich contacted Unis and arranged to meet at a bar called the Glass Tower at 10:00 P.M. on Tuesday, October 2, 1973. Sergeant Nicklow instructed Magistrate Maravich to draw out the subject of money at this meeting. It should be noted that the meeting between Unis and Magistrate Maravich at the Glass Tower and other bars they visited that night were watched by surveillance teams, and their conversation was recorded by way of a listening device which had been attached to the body of Magistrate Maravich. The request of the defense attorneys to play these tapes at trial was denied. During the night Magistrate Maravich and Unis drank very heavily. Although the testimony of Magistrate Maravich and Unis was not in total agreement, it is clear that Magistrate Maravich brought up the subject of money and asked about two or three thousand dollars of syndicate money. Unis said there was no syndicate money involved, that it was appellant's private money and all he could raise was one thousand dollars. Several days after this meeting, Magistrate Maravich, at the instruction of the police, contacted Unis and set up a meeting at the Magistrate's Office for October 5, 1973, where the money would be passed. It was agreed that one thousand dollars would be sufficient.

On October 3, 1973, the appellant stopped in at Unis' tavern, as usual, on his way home from work. At that

time Unis told him that Magistrate Maravich wanted $3,000.[4] The appellant's response was "You're crazy. I don't have that kind of money. Forget it." The next meeting between Unis and the appellant was on October 5, 1973, when Unis went to appellant's place of business. Appellant testified that Unis said "What are you going to do? Are you going to donate? Are you going to help Mr. Maravich out?" The appellant then gave Unis one thousand dollars and in turn Unis took the money to Magistrate Maravich. Shortly thereafter the appellant, Unis, and Albert were arrested. Unis made a plea bargain and agreed to testify for the prosecution. The appellant and Albert were tried together. Albert was found not guilty. The appellant, however, was found guilty of all charges enumerated above.

From the testimony of Albert and the appellant, if believed, it could be concluded that the appellant was not disposed to commit the crime and that there was police conduct through Magistrate Maravich likely to entrap the innocently disposed appellant. Whether this testimony is to be believed is a question which the jury, not the judge, must decide. By refusing to give the appellant's requested instruction the trial judge, in fact, decided the question of credibility alone, thereby precluding consideration by the jury of the defense of entrapment. Under the circumstances of this case, *Commonwealth v. Conway,* supra, requires that the entrapment defense be submitted to the jury.

The Order of the Court below denying appellant's motions in arrest of judgment and for a new trial should be reversed and the case should be remanded for a new trial.

HOFFMAN and SPAETH, JJ., join in this opinion.

---

4. It should be noted that both the evidence of the Commonwealth and the appellant show that up to this time, with the exception of the initial meeting with Unis at his tavern, the appellant was not involved in any of the activities discussed above.