## Commonwealth *v.* Berrigan, Appellant.

Argued December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, and SPAETH, JJ. (VAN DER VOORT, J., absent).

*Kenneth C. Brown,* Assistant Public Defender, with him *John A. Felix,* Public Defender, for appellant.

*Gregory Smith,* with him *William S. Kieser,* Assistant District Attorney, and *Allen E. Ertel,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, April 22, 1975:

The six Judges who heard this appeal being equally divided, the judgment of sentence is affirmed.

OPINION BY JACOBS, J., IN SUPPORT OF AFFIRMANCE:

This is an appeal from the conviction of appellant, Gary S. Berrigan, for possession and delivery of marijuana in violation of The Controlled Substance, Drug, Device and Cosmetic Act[1] for which he received a sentence of five years probation. The only issue involved is whether the facts of this case establish as a matter of law the defense of entrapment. I feel that the evidence supported the trier of fact's determination of no entrapment and would affirm the decision of the court below.

At trial before the court, a jury having been waived, the following facts were revealed: Mrs. Eileen Dowes, the only witness for the Commonwealth, testified that

---

1. Act of April 14, 1972, P.L. 233, No. 64, §§1 *et seq.,* 35 P.S. §§780-101 *et seq.* (Supp. 1974-75).

on November 8, 1972, she was employed by the Williamsport Police Department as a confidential informant. On that evening she entered a restaurant in Williamsport and occupied a seat next to appellant at the bar. She testified that she bought appellant a beer and started a conversation with him. The subject became that of drugs, and then Mrs. Dowes asked appellant whether he could help her purchase some. According to Mrs. Dowes, appellant replied that he did not sell them but he could get her "anything" that she wanted. On re-direct examination Mrs. Dowes explained that appellant introduced the subject of drugs into the conversation by mentioning to her that some of his friends had robbed a drug store and that the police were investigating the matter. After appellant's response that he could get her "anything" she wanted, the two left the bar and entered Mrs. Dowes' car. They first drove to someone's residence, but the person appellant was hoping to contact for drugs was not home. Then, on appellant's instructions, Mrs. Dowes drove to another bar. She gave appellant $30.00 and he left the car but soon returned with a substance later to be identified as marijuana which he gave to Mrs. Dowes along with $5.00 change. Mrs. Dowes then drove appellant back to the bar where she had first met him.

Appellant took the witness stand in his own defense and admitted that he purchased the marijuana for Mrs. Dowes. However, he testified that it was Mrs. Dowes who brought up the subject of drugs in their conversation. He further claimed that he saw Mrs. Dowes three or four times before he finally obtained the marijuana for her.

The trial judge sitting without a jury found appellant guilty as charged. In his opinion, the trial judge stated the following concerning the entrapment defense presented by appellant:

"The Court finds that Mrs. Dow[e]s did not employ methods of persuasion or inducement which

would cause an innocent person to commit a criminal act. The Court does not believe the defendant's testimony of repeated attempts by Mrs. Dow[e]s to induce him to provide drugs.

"The testimony of both Mrs. Dow[e]s and the defendant agree that the only inducement or persuasion by Mrs. Dow[e]s was if the defendant could get her some drugs. There was no evidence that Mrs. Dow[e]s did more than make a request to buy some drugs and gave him the money to purchase marijuana.

"It appears to the Court that the evidence shows no more than conduct by the agent, which afforded opportunities or facilities for the commission of the offense and was no more than an artifice or stratagen [sic] to catch one ready to commit the criminal act of delivery of marijuana. The defendant did not exhibit any hesitancy to commit the act." Opinion of court below at 4.

In *Commonwealth v. Harrison*, 228 Pa. Superior Ct. 42, 44, 323 A.2d 848, 849 (1974), we stated: "The test for entrapment is whether the criminal design was created by the officer or whether the officer merely afforded an opportunity for the commission of a crime by the person already disposed to commit the crime, in which case, there is no entrapment."[2] *See also Commonwealth v. Klein*, 222 Pa. Superior Ct. 409, 294 A.2d 815 (1972); *Commonwealth v. Conway*, 196 Pa. Superior Ct. 97, 173 A.2d 776 (1961). I believe that the court below applied the proper test in determining the existence of entrapment. I am also convinced that the finding of the court below that entrapment was not established is supported by the record.

---

2. The present test for entrapment is set forth in §313 of the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1, 18 Pa.C.S. §313 (1973). However, that act does not apply to the present case because the offense herein was committed prior to the effective date of that act, to wit, June 6, 1973.

The issue of entrapment is generally one that should safely be left to the jury or the court if it is the trier of fact. *See Commonwealth v. Klein,* supra; *Commonwealth v. Conway,* supra; *Johnson v. United States,* 317 F.2d 127 (D.C. Cir. 1963). In *Conway,* there was little evidence of defendant's predisposition to commit the crime except for the readiness with which he accepted the inducement of the police undercover agent. However, in that case our Court held that the defense should have been submitted to the jury. Similarly in *United States v. Ortiz,* 496 F.2d 705 (2d Cir. 1974), there was no evidence of defendant's predisposition to commit the crime except her lack of hesitation when asked by the undercover agent whether she could sell him an ounce of heroin, but the Court permitted the trial judge's finding of no entrapment to stand.

In *Sherman v. United States,* 356 U.S. 369 (1958), the United States Supreme Court found entrapment to have been established as a matter of law. However in that case the government informer testified that several meetings were required with defendant to overcome his refusal at first and later hesitancy to deliver drugs. In *Sherman,* the defendant was undergoing a cure for narcotics addiction, but because of the government informer's conduct the defendant not only became a source for drugs but also returned to the habit.

The conduct of Mrs. Dowes in the present case pales in comparison with that of the agent in the *Sherman* case. As found by the trial judge, the criminal actions of appellant immediately followed the first meeting of the agent and the appellant. Inducement or persuasion, if any, was minimal. As soon as Mrs. Dowes asked appellant whether he could obtain any drugs for her he responded without hesitation that he could get her "anything" she wanted. More importantly, there was no refusal or reluctance on the part of appellant to enter into a criminal venture as there was on the part of the de-

fendant in *Sherman*. Although Mrs. Dowes set the stage for the commission of the offense, I cannot say as a matter of law that appellant was not disposed to commit it. The lower court's finding that the defense of entrapment was not established is supported by the facts.

I would affirm the judgment of sentence.

WATKINS, P.J., and PRICE, J., join in this opinion.

---

OPINION BY HOFFMAN, J., IN SUPPORT OF REVERSAL:

The appellant contends that the lower court erroneously convicted him of possession of marijuana with intent to deliver and delivery of marijuana because the Commonwealth perpetrated an entrapment as a matter of law.

The Commonwealth's case consisted entirely of the testimony of Eileen Dowes, who was working with the Williamsport police as a "confidential informant" when the appellant purchased marijuana for her. Dowes testified that she entered a bar in Williamsport on the night of November 8, 1972, and observed the appellant "sitting at the bar all alone, [looking] rather forelonged [sic]." Mrs. Dowes bought a beer for the appellant and the two began to converse. During their conversation "the subject of drugs came up" and the agent asked the appellant whether he could help her buy marijuana. The appellant replied that he knew where drugs could be purchased, although he himself was not a seller. The two entered the agent's car and proceeded to a residence. Mrs. Dowes gave the appellant $30.00; he entered the residence and returned with one ounce of marijuana and $5.00 change. Agent Dowes testified that to the best of her knowledge, the appellant acted merely as a conduit and did not profit from the transaction. Mrs. Dowes acknowledged that she came to the Williamsport area in October, 1972, "for the specific purpose of trying to make purchases of controlled substances" and that she had never seen or talked to the

appellant prior to the evening of November 8, 1972. The appellant waived a jury trial and was found guilty of possessing marijuana with the intent to deliver, and the delivery of marijuana,[1] and was sentenced to five years probation.

In *Commonwealth v. Conway,* 196 Pa. Superior Ct. 97, 102, 173 A. 2d 776, 779 (1961), a leading case on the issue of entrapment, our court discussed the two formulations of the entrapment defense set forth in Tentative Draft No. 9 of the American Law Institute's Model Penal Code. The first formulation stated: "A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense he solicits, encourages or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so." The alternative formulation submitted in the Model Penal Code has subsequently been incorporated into the new Pennsylvania Crimes Code:

"(a) General rule—A public law enforcement official or a person acting with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will

---

1. "The following acts and the causing thereof within the Commonwealth are hereby prohibited: . . . (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act . . ." 1972, April 14, P.L. 233, No. 64, §13, imd. effective, as amended 1972, Oct. 26, P.L. 1048, No. 263, §1, imd. effective, 35 P.S. §780-113(a)(30).

be committed by persons other than those who are ready to commit it."[2]

In *Conway,* Judge FLOOD commented on the two formulations: "Both of these formulations leave real problems for the trial judge. In the first the emphasis is upon the innocent character of the defendant, but nevertheless requires some conduct of the law enforcement officials meriting disapproval before the defense is available. In the other, the emphasis is upon the seriously improper conduct of the police, yet the conduct must be such as to create a risk that a man not disposed to the commission of the crime will be entrapped, although it is available to a defendant who is not of such innocent disposition." 196 Pa. Superior Ct. at 103, 173 A. 2d at 779.

Judge FLOOD was apparently of the view that the two proposals represented the difference in emphasis between the majority and concurring opinions in *Sorrells v. United States,* 287 U.S. 435 (1932), and *Sherman v. United States,* 356 U.S. 369 (1958). The majority opinions in those cases focus the entrapment issue on the predisposition of the defendant to commit the crime: "To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman v. United States,* supra, at 372. This concern is manifested by the majority's summation of the application of entrapment law to the facts there presented: "The case at bar illustrates an evil which the defense of entrapment is designed to overcome. The government informer entices someone attempting to avoid narcotics not only into carrying out an illegal sale but also into returning to the habit of use. Selecting the proper time, the informer then tells the government agent. The set-up is accepted by the agent without even a question as to the manner in which the informer encountered the seller. Thus the Govern-

---

2. 1972, Dec. 6, P.L. 1482, No. 334, §1, eff. June 6, 1973, 18 Pa. C.S. §313(a).

ment plays on the weaknesses of an innocent party and beguiles him into committing crimes which he otherwise would not have attempted. Law enforcement does not require methods such as this."[3] *Sherman,* supra, at 376 (footnote omitted). The concurring opinion in *Sherman* by Mr. Justice FRANKFURTER indicates his belief that the entrapment defense should focus on the conduct of the police: "This does not mean that the police may not act so as to detect those engaged in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation. It does mean that in holding out inducements they should act in such a manner as is likely to induce to the commission of crime only these persons and not others who would normally avoid crime . . . This test shifts attention from the record and predisposition of the particular defendant to the conduct of the police and the likelihood, objectively considered, that it would entrap only those ready and willing to commit crime." 356 U.S. at 383-384.[4]

---

3. See also Comment, Decoy Enforcement of Homosexual Laws, 112 U.Pa.L. Rev. 259, 272 (1963): "The doctrine of entrapment reflects a policy that the powers of government should not be used to instigate otherwise innocent persons to commit crimes which they would not commit on their own. These persons are situational rather than chronic offenders. Courts classically implement the entrapment policy by ascertaining, in each instance, the defendant's 'predisposition' to commit the offense and the degree of persuasion or enticement offered by the decoy." (footnotes omitted).

4. The United States Supreme Court has recently reaffirmed the viewpoint of the *Sorrells-Sherman* emphasis on the predisposition of the defendant: "While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, cf. *Rochin v. California,* [342 U.S. 165 (1952)], the instant case is distinctly not of that breed . . . The law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due

It would seem that Judge FLOOD'S analysis is essentially correct because elements of police conduct and the predisposition of the defendant will enter into the decision under either formulation. A balancing test will result: the greater the police misconduct, the less need for lack of predisposition. In any event, the facts of the instant case must be judged against the pre-Code standards because the offense occurred prior to the effective date of the new Crimes Code. As stated in *Conway*, the defense will arise when a law enforcement officer employs methods of persuasion or inducement which create a substantial risk that otherwise innocently disposed persons will be induced to commit a criminal offense. "This rule requires, before the defence becomes available, (1) a defendant not disposed to commit the crime, and also (2) police conduct likely to entrap the innocently disposed." 196 Pa. Superior Ct. at 104, 173 A. 2d at 780 (footnote omitted). *See also Commonwealth v. Harrison*, 228 Pa. Superior Ct. 42, 323 A. 2d 848 (1974) ; *Commonwealth v. Burke*, 220 Pa. Superior Ct. 122, 286 A. 2d 378 (1971) (HOFFMAN, J., dissenting), aff'd by an equally divided court, 458 Pa. 643, 322 A. 2d 340 (1974); *Hoffco Corp. Liquor License Case*, 198 Pa. Superior Ct. 1, 4, 180 A. 2d 270 (1962). In *Commonwealth v. Klein*, 222 Pa. Superior Ct. 409, 294 A. 2d 815 (1972), we said: "The test is whether the criminal design was created by the officer or whether the officer merely afforded the opportunity for the commission of a crime by a person already disposed to commit that crime, in which case there is no entrapment." 222 Pa. Superior Ct. at 411, 294 A. 2d at 816. *See also United States v. Watson*, 489 F. 2d 504 (3d Cir. 1973) ; *United States v. Catanzaro*, 407 F. 2d 998 (3d Cir. 1969). It can be seen that a case of entrapment involves two possible issues: "(1) Did the government put

Process Clause of the Fifth Amendment. *Kinsella v. United States ex rel. Singleton*, [361 U.S. 234 (1960)]." *United States v. Russell*, 411 U.S. 423, 431-432, 93 S. Ct. 1637, 1643, 36 L.Ed.2d 366 (1973).

in motion this particular offense; and (2) did it initiate the defendant's criminal state of mind, or only activate it? The first issue is called inducement; the second is considered in terms of defendant's predisposition." *Sagansky v. United States,* 358 F. 2d 195, 202 (1st Cir. 1966).

Most courts place the initial burden of persuasion on the entrapment issue on the defendant: "When the defense of entrapment is in issue, the defendant bears the initial burden of showing that the Commonwealth induced his alleged offense .... Once there is a showing, by a preponderance of the evidence, that a defendant was induced, the burden then shifts to the Commonwealth to establish beyond a reasonable doubt that the defendant was predisposed to commit the offense without the active encouragement of the Commonwealth." *Commonwealth v. Klein,* supra, at 412-413, 294 A. 2d at 816 (HOFFMAN, J., concurring). *See also United States v. Kros,* 296 F.Supp. 972 (E.D.Pa. 1969).[5]

Many entrapment cases arise in the posture of deciding whether or not the trial court erred in not submitting the issue to the jury. Because the appellant in the present case was tried by a judge sitting without a jury, he can succeed on his claim only if the record shows that the Commonwealth perpetrated an entrapment as a matter of law. "Generally it is a question of fact for the jury to determine whether or not the Government has proved beyond a reasonable doubt that there was no entrapment. But exceptional circumstances arise when entrapment is

---

5. Some courts have adopted a unitary approach to the burden of proof issue. Under this view, the prosecution must show beyond a reasonable doubt that the defendant was not entrapped. Thus, the prosecution can show either that the defendant was not induced, or that the defendant was predisposed to commit the offense. See e.g., *United States v. Watson,* supra; *United States v. Braver,* 450 F.2d 799 (2d Cir. 1971); *United States v. Conversano,* 412 F.2d 1143 (3d Cir. 1969), cert. denied, 396 U.S. 905 (1969); *Notaro v. United States,* 363 F.2d 169 (9th Cir. 1966).

established as a matter of law, as the Supreme Court unanimously found in the Sherman case . . . There, the Court held that it was 'patently clear' that the Government agent had induced the violation by an addict who was trying to overcome his habit, . . . and there was no evidence except for two prior convictions, . . . that defendant was predisposed to commit the offense." *United States v. Owens*, 228 F.Supp. 300, 304 (D.C. Cir. 1964).

Examination of the facts presented by this case reveals that the appellant's contention is meritorious. Clearly, the defendant's burden of persuasion on the inducement question was satisfied by the testimony of Mrs. Dowes. She stated that she had never seen the appellant before November 8, 1972; that she saw the appellant sitting alone in a bar; that she purchased a beer for the appellant; that she began a conversation with the appellant; that she explained to the appellant that she was "new in town" and would like help in purchasing drugs; that she drove the appellant in her car to procure the drugs; and that she provided the funds with which the appellant purchased the one ounce of marijuana. The burden then shifted to the Commonwealth to prove beyond a reasonable doubt that the appellant was predisposed to commit the offense. Thus, it must be resolved "whether the accused was induced by the Government to engage in the condemned conduct or, on the contrary, availed himself of the opportunity to do what he was ready and predisposed to do." *Johnson v. United States*, 317 F.2d 127, 130 (D.C. Cir. 1963).

The appellant acted only as a conduit in the transaction by which Mrs. Dowes procured the marijuana; he did not "sell" the drugs and did not profit in any way because of the role he played. There is no evidence that the appellant had ever previously been arrested or convicted for drug-related charges. Mrs. Dowes testified that the appellant told her that he himself did not use or sell

drugs. The appellant's conduct was no more than a "casual act induced by the officer." Cf. *Commonwealth v. Harrison,* supra, at 44, 323 A. 2d at 849. There is absolutely no evidence of record which would indicate that the appellant was predisposed to commit the crime of delivering a controlled substance and merely took advantage of the opportunity afforded by Mrs. Dowe's request. On the contrary, the evidence compels the conclusion that the appellant was an innocently disposed person, who was tempted, for whatever reason, to aid a young woman in her quest to obtain marijuana. It is utterly unrealistic for this Court to equate one's knowledge of the availability of marijuana with a criminal intent. The role played by the appellant in this scenario pales in comparison with the conduct of the police. Mrs. Dowes came to Williamsport specifically to solicit purchases of drugs. The agent had no knowledge whatsoever to indicate that the appellant would be a likely source. What the police did in this case was to manufacture a crime, and then prosecute the appellant for committing it. I realize that violations of the narcotics laws are difficult to discover and that the law of entrapment does not preclude the Commonwealth "from using unusual means of ferreting out violations . . ." *Johnson v. United States,* supra, at 130. However, the Commonwealth in this case did not snare a criminal. Rather, they employed a persuasive operative, a young woman, to tempt a young man sitting alone in a bar, into engaging in criminal conduct. "Law enforcement does not require methods such as this." *Sherman v. United States,* 356 U.S. at 376. Under either the common law or the present Crimes Code formulation, the Commonwealth has perpetrated an entrapment.

The judgment of sentence should be reversed and the appellant discharged.

CERCONE and SPAETH, JJ., join in this opinion.