341 A.2d 463

**COMMONWEALTH of Pennsylvania**

v.

**John M. McNEILL, Appellant.**

Supreme Court of Pennsylvania.

Argued April 26, 1974.

Decided July 7, 1975.

1. Act of June 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101 (Supp. 1974).

Joseph C. Mesics, Public Defender, Lebanon, for appellant.

David J. Brightbill, Asst. Dist Atty., Lebanon, George E. Christianson, Dist. Atty., Lebanon, for Common-wealth-appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION

MANDERINO, Justice.

The appellant, John M. McNeill, was convicted in a jury trial of murder in the first degree. Post-trial motions were denied and this appeal followed. The appellant now raises, as he did in post-trial motions, two issues concerning portions of the trial court's charge to the jury. These portions were specifically objected to at trial and are properly before us now.

The prosecution's evidence at trial revealed that at approximately 11:30 p. m., on December 20, 1972, the appellant, and a friend, William Paul Kerr, were at Sam's Bar in Lebanon, Pennsylvania. Appellant was seated several bar stools away from a Donald Ratcliffe, whom appellant recognized as a fellow Bethlehem Steel Company worker, but with whom appellant was not personally acquainted. A conversation ensued between appellant and Ratcliffe which, in a period of about one-half hour, deteriorated into an argument instigated by Ratcliffe. During this period of time, Ratcliffe verbally harassed appellant and referred to appellant's deceased father as crazy, stupid, and retarded, and generally continued to degrade appellant's deceased father. The appellant became enraged, slammed his glass of beer on the bar, and left followed immediately by his friend, Kerr. Outside the bar, appellant told Kerr that he was going to get his gun and "kill that guy." Appellant then walked the three blocks from the bar to his residence, picked up and loaded his revolver, walked back, and reentered the bar. Immediately after reentering the bar, he shot and killed

Ratcliffe, while yelling "foul things" at the deceased. All this occurred within about ten minutes from the time appellant left the bar enraged.

After the shooting, appellant remained on the scene, turned the revolver over to the bartender, and requested that the police be called. A police officer arrived shortly after the incident and saw the appellant seated at the bar. He testified that appellant turned to him and said: "I shot him. . . . I'd do it again."

Evidence produced by the defendant indicated that appellant's father had died two or three years earlier while appellant was out of town. Testimony disclosed that appellant and his father were very close, that shortly before his father's death, appellant and his father had had an argument which resulted in appellant's leaving in anger for Washington, D. C., for a period of time. When appellant returned to his home, his father was dead, and appellant apparently suffered an anxiety reaction because the hostile feelings engendered by this argument had not been worked out before his father's death. Testimony also disclosed that appellant felt great respect and affection for his father, and one witness testified to seeing appellant crying as appellant talked about his father's death on the occasion of what would have been his father's birthday.

Appellant claims that the trial court's charge to the jury was prejudicial and constituted reversible error. He first argues that the trial court, while summarizing the evidence for the jury, drew several inferences favorable to the prosecution without informing the jury as to any counterbalancing inferences favoring the appellant that could be drawn from the evidence. Secondly, appellant claims that the trial court, although instructing the jury on voluntary manslaughter, erred in telling the jury that in the trial court's opinion there was no evidence of any legally sufficient provocation that would reduce the verdict to voluntary manslaughter. Since we agree with

appellant's second contention, and reverse the judgment of sentence and remand for a new trial on that ground alone, we need not consider the other issue raised.

While charging the jury, the trial judge stated: *"In our opinion, there is no evidence that any legally, sufficient cause of provocation which, if this was a malicious killing, would reduce it to voluntary manslaughter."* Although the trial judge made it clear to the jury during the charge that his opinion was not binding and it was for the jury to determine whether the verdict should be voluntary manslaughter, the trial judge's expression of opinion in this case went to the only issue presented in the trial.

In *Commonwealth v. Archambault*, 448 Pa. 90, 97, 290 A.2d 72, 75 (1972), we held that "a trial judge may not suggest a verdict of guilty or not guilty nor directly express an opinion on the guilt of innocence of the defendant . . ." (Emphasis added.) In so holding, we pointed out at p. 96, 290 A.2d at 75, that:

> "In light of the decisive effect that a jury is likely to give to a judge's statement that in his opinion the accused is guilty, *it is clear that cautioning instructions to the effect that the jury is the final arbiter of the verdict are insufficient to vitiate the impact of the judge's statement."* (Emphasis added.)

The rationale behind the conclusion in *Archambault* was our belief,

> "that when a judge expresses to the jury his opinion that the accused is guilty, he invades the province of the jury and thereby violates the accused's fundamental right to trial by jury, a right that has been guaranteed by the Constitution of this Commonwealth since 1776." (Footnote omitted.)

*Id.* at 93, 290 A.2d at 73.

Applying the *Archambault* reasoning, four members of this Court were of the opinion in *Commonwealth v.*

*Goins,* 457 Pa. 594, 321 A.2d 913 (1974), that the expression by the trial court of its opinion of the appropriate degree of guilt was a usurpation of the function of the jury as was the trial court's comment as to its opinion of guilt or innocence condemned in *Archambault.* (See the opinion of Mr. Justice Nix, joined by Mr. Justice O'Brien and the concurring opinion by Mr. Justice Roberts joined by Mr. Justice Manderino.) As stated by Mr. Justice Nix at p. 601, 321 A.2d at 917:

" . . . the mere fact that the sole issue in controversy may be without impressive support in the testimony does not permit the court to urge a verdict by expressing an opinion as to its weakness."

The appellant here did not contest his commission of the homicide; he admitted all of the circumstances surrounding the homicide. His entire defense was directed at establishing that the degree of culpability was lessened by the intensity of the rage under which he acted at the time. The defense presented expert psychiatric testimony that, at the time of the shooting, appellant was "suffering from an acute anxiety reaction [to the death of his father], and . . . acted beyond his control in a heat of passion . . ." Whether or not the victim's conduct constituted sufficient provocation, the fact remains that the jury was authorized to return a verdict of voluntary manslaughter. *Commonwealth v. Hill,* 444 Pa. 323, 327, 281 A.2d 859, 861 (1971). *Commonwealth v. Hoffman,* 439 Pa. 348, 358, 266 A.2d 726, 731 (1970). The judge's comment could reasonably have been interpreted by the jury to indicate that they should not bring in a verdict of voluntary manslaughter. "The jury is undoubtedly going to attribute to the judge, because of his experience in criminal cases, special expertise in determining guilt or innocence." *Commonwealth v. Archambault,* 448 Pa. 90, 95, 290 A.2d 72, 75 (1972). "The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare excep-

tions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box . . ." *Commonwealth v. Myma*, 278 Pa. 505, 508, 123 A. 486, 487 (1924). In this case it cannot be said that the trial judge's comment did not influence the jury's deliberation as to which verdict should be returned.

Judgment reversed and a new trial granted.

POMEROY, J., filed a concurring opinion.

O'BRIEN, J., concurs in the result.

JONES, C. J., and EAGEN, J., dissent.

POMEROY, Justice (concurring).

The trial judge in this case apparently gave the charge on voluntary manslaughter suggested by Dean Laub in his Pennsylvania Trial Guide, § 618.5. This sort of cautionary charge in a case where there is in fact no evidence of the elements of voluntary manslaughter, (such, for example, as a case of felony murder) seems to me not only proper but desirable. See *Commonwealth v. Matthews*, 446 Pa. 65, 82, N.2, 285 A.2d 510, 518 N.2 (1971), (dissenting opinion of Pomeroy, J.). Where, however, there is evidence that a killing, although intentional, was committed without malice, as where the defendant is shown to have been acting under the influence of sudden passion which was caused by legally adequate provocation that placed him beyond the control of reason, a verdict of voluntary manslaughter would obviously have an evidentiary basis. In such a situation, I can see no justification for the trial court to give to the jury his opinion to the contrary. The fact that the weight of the evidence may indicate guilt of a greater offense is not sufficient, in my view, to justify the cautionary charge I approved

in *Matthews,* supra, where evidence of the elements of voluntary manslaughter were entirely absent.

The sole question for me, therefore, in the case at bar, is whether there was or was not evidence that would tend to show that John McNeill was guilty of voluntary manslaughter. The record satisfies me that a verdict of voluntary manslaughter would have been supportable on the evidence, even though the verdict of murder which the jury returned in the first degree may well have been the more proper one. Since that verdict may have been influenced by the court's observation that "there is no evidence [of] any legally sufficient cause of provocation" to reduce the killing to voluntary manslaughter, I agree that a new trial must be awarded. *Commonwealth v. Bailey,* 450 Pa. 201, 204–06, 299 A.2d 298, 300–01 (1973).