421 A.2d 1165

**COMMONWEALTH of Pennsylvania**

v.

**Stephanie Ann DANKO, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1979.

Filed Sept. 5, 1980.

Francis X. Nolan, Philadelphia, for appellant.

Vram Nedurian, Jr., Assistant District Attorney, Media, for Commonwealth, appellee.

Before SPAETH, CAVANAUGH and O'KICKI,* JJ.

SPAETH, Judge:

Appellant was tried by a judge sitting without a jury and was convicted of criminal solicitation [1] and prostitution.[2] Post–verdict motions were denied and appellant was sentenced to one year's probation and a $2,500 fine for prostitution.[3] On this appeal appellant argues (1) that section 5902 of the Crimes Code is unconstitutional; (2) that the evidence was insufficient to sustain the convictions; and (3) that the lower court erred in not finding entrapment as a matter of law.

The facts were as follows. On May 31, 1978, Officer Donald L. Fredericks of the Pennsylvania State Police Vice Squad went to a hotel room that the police had rented at the Holiday Inn in Tinicum Township, Delaware County, and placed a telephone call to a number listed in a newspaper advertisement for an "out–call" massage service (meaning that a woman would be sent to the caller's room to give the massage). Officer Fredericks telephoned the service and requested that a woman be sent to his room. Approximately two hours later appellant knocked on his room door. The officer let her in and she asked for twenty–five dollars as the cost of the massage, and to use his telephone. He paid her and she telephoned someone that she had the twenty–five dollars and gave her location. When she had finished making the telephone call she told the officer to get undressed and lie face down on the bed, which he did. She started the massage and after about five minutes she asked him to turn over onto his back, which he did. She then

---

* President Judge JOSEPH F. O'KICKI, of the Court of Common Pleas of Cambria County, Pennsylvania, is sitting by designation.

1. 18 Pa.C.S. § 902.

2. 18 Pa.C.S. § 5902(a)(1).

3. No sentence was imposed on the solicitation conviction.

proceeded to massage the front of his body. After approximately ten minutes he asked if there were anything else to the massage. She told him that it would cost fifty dollars for a nude massage. He said that he was not interested in that. She then informed him that it would cost seventy–five dollars for a "half and half", which the officer interpreted to mean half oral and half vaginal intercourse. She also told him that it would cost fifty–five dollars for a "french", which the officer interpreted to mean oral intercourse. He told her that he wanted the french. He then went and took some money from his clothes while she undressed. He gave her the money and she put it into her purse. He then placed her under arrest.

i

Section 5902 of the Crimes Code is entitled "Prostitution and related offenses" and provides in part (a) as follows:

(a) Prostitution.—A person is guilty of prostitution, a misdemeanor of the third degree, if he or she:

(1) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; or

(2) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity. 18 Pa.C.S. § 5902(a).

Appellant attacks the constitutionality of this section on the grounds that it implicates speech protected by the First Amendment,[4] is unconstitutionally vague in violation of the Fourteenth Amendment, and represents ,a denial of equal protection of the laws in violation of the Fourteenth Amendment because the prostitute's patron is guilty of only a summary offense under section 5902(e) while the prostitute is guilty of a misdemeanor of the third degree under section 5902(a). *Cf. Commonwealth v. Bonadio*, 490 Pa. 91, 415 A.2d 47 (1980) (violation of equal protection found where statute made sodomy criminal depending on the defendants' marital status).

4. Appellant raises this free speech argument as part of her argument that the statute is vague on its face.

■ We may not consider appellant's constitutional arguments. Although they clearly could have been raised in a pre–trial motion, appellant filed no pre–trial motion contesting the constitutionality of section 5902. *See* Pa.R.Crim.P., Rule 306. Perhaps her failure to raise her constitutional arguments before trial alone requires this court to find that she waived her facial constitutional challenges to the statute. *See Commonwealth v. Barone,* 276 Pa.Super. 282, 288, 419 A.2d 457, 460–61 (1980) (Opinion by CERCONE, P. J., joined by CAVANAUGH, J.); *Commonwealth v. Ashford,* 268 Pa.Super. 225, 231, 407 A.2d 1328, 1330–31 (1979), *citing, Commonwealth v. Warren,* 475 Pa. 31, 379 A.2d 561 (1977). However, we need not find waiver on that basis, for appellant also failed to raise any specific constitutional challenge to section 5902 at any time during her trial, even though she had a clear opportunity to do so.[5] This failure clearly represents a waiver.[6] Accordingly, appellant's constitutional arguments in this case are waived.

## 2

Appellant makes four arguments in support of her contention that the evidence was insufficient to sustain the convictions.

■ Appellant's first three arguments with respect to the sufficiency of the evidence are so obviously without merit that they will not receive extended discussion. Her first argument is that Officer Fredericks' testimony should not have been believed, and her second argument is that the testimony she presented of her good character was sufficient to create a reasonable doubt. However, it is settled that decisions either as to the credibility of witnesses or the

5. At one point in argument in support of her demurrer at the close of the Commonwealth's case appellant protested that the words "sexual activity" were broad. However, at no time before or during trial did she specifically argue that the statute was unconstitutionally vague.

6. We also note that appellant raised no constitutional arguments in her written post–verdict motions. Her vagueness argument apparently was raised in her post–verdict brief and was treated by the lower court in its opinion.

weight to be afforded to character testimony are for the finder of fact and will not be disturbed on appeal. *Commonwealth v. Rebovich*, 267 Pa.Super. 254, 406 A.2d 791 (1979). *See Commonwealth v. Alston*, 461 Pa. 664, 337 A.2d 597 (1975). Appellant's third argument is that the evidence was insufficient to convict her of solicitation to commit prostitution under section 5902(a)(2), because she did not "loiter in . . . any public place." However, appellant was not convicted of public solicitation under section 5902(a)(2) but of criminal solicitation generally under section 902 of the Crimes Code.[7]

Appellant's fourth argument with respect to sufficiency is that the evidence was insufficient to convict her of prostitution under section 5902(a)(1). It will be recalled that section 5902(a)(1) provides that a person is guilty of prostitution if he or she "is an inmate of a house of prostitution or otherwise engages in sexual activity as a business." The term "sexual activity" is defined in section 5902(f) to "[i]nclude [ ] homosexual and other deviate sexual relations." Appellant contends that even when viewed in the light most favorable to the Commonwealth, the evidence does not demonstrate that she "engage[d] " in any "sexual activity" with Officer Fredericks. The gist of appellant's argument is that while the record is clear that she *agreed* to engage in oral intercourse for a fee, accepted payment of the fee, and undressed, she did not *actually* engage in any intercourse.

■ Preliminarily, it may be noted that had appellant been convicted of attempted prostitution as a criminal attempt proscribed by section 901 of the Crimes Code, we should have little trouble with her sufficiency argument, for the evidence of her actions in this case was clearly sufficient to prove the "substantial step toward the commission of [the] crime" necessary to convict. 18 Pa.C.A. § 901(a). Moreover, a conviction for an attempt may be found even on

7. Appellant was convicted on two criminal informations. Information 2878–A charged appellant with prostitution under section 5902. Information 2878–B charged solicitation and cited section 902.

an indictment charging the completed crime.[8]  *See Commonwealth v. Cunningham*, 248 Pa.Super. 219, 375 A.2d 66 (1977); *Commonwealth v. White*, 232 Pa.Super. 176, 335 A.2d 436 (1975).

In enacting section 5902(a), the legislature created two distinct crimes of prostitution, which are directed against very different activities.  By making it a crime, in section (a)(1), to be "an inmate of a house of prostitution or otherwise engaged [ ] in sexual activity as a business," the legislature attempted to limit professional prostitution and all the corruption that the commercial vice is believed to create.  By making it a crime, in section (a)(2), to "loiter [ ] in or within any public place for the purpose of being hired to engage in sexual activity," the legislature attempted to limit the public annoyance that soliciting in the public view may create;  section (a)(2) may properly be termed a public disorder offense, rather than a commercial vice offense.[9]  Sometimes these two distinct crimes of prostitution may overlap, but in this case our concern is only with section (a)(1).

Section 5902(a) was derived from section 251.2 of the Model Penal Code, and except for the clause defining the grade of the offense, is a verbatim copy of section 251.2, which provides:

(a) Prostitution.  A person is guilty of prostitution, a pettty [*sic*] misdemeanor, if he or she:

8.  There would be the problem, however, of appellant having been convicted of two inchoate crimes.  *See* 18 Pa.C.S. § 906.  *And see Commonwealth v. Tingle*, 275 Pa.Super. 489, 419 A.2d 6 (1980); *Commonwealth v. Jackson*, 261 Pa.Super. 355, 396 A.2d 436 (1978); *Commonwealth v. Crocker*, 256 Pa.Super. 63, 389 A.2d 601 (1978).

9.  We recognize the arguments that have been offered for decriminalizing prostitution.  *See e. g.*, Richards, Commercial Sex And the Rights of the Person: A Moral Argument For the Decriminalization of Prostitution, 127 U.Pa.L.Rev. 1195–1287 (1979).  *And see Commonwealth v. Bonadio*, *supra*, (FLAHERTY, J.).  However, such arguments are more properly directed to the legislature than to the courts.  *See Lurie v. Republican Alliance*, 412 Pa. 61, 65, 192 A.2d 367, 370 (1963), *quoting Commonwealth ex rel. Fox v. Swing*, 409 Pa. 241, 186 A.2d 24 (1962).

(a) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; or

(b) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity.

Section 251.2 was in turn derived from section 207.12 of Tentative Draft No. 9 of the Model Penal Code, which defined prostitution as follows:

(1) *Prostitution.* A person who engages, or offers or agrees to engage in sexual activity for hire, or is an inmate of a house of prostitution, or enters this state or any political subdivision thereof to engage in prostitution, commits a petty misdemeanor. Such activity is hereinafter referred to as prostitution, and the actor is referred to as a prostitute.

Thus, a cursory comparison of the language of section 251.2 and that of section 207.12 of the Tentative Draft lends some support to appellant's argument. Clearly, appellant's actions would have made her a prostitute under section 207.12 because that section included the phrase, "offers or agrees to engage in sexual activity for hire." Section 251.2, however, omits any reference to offer or agreement, instead using the phrase, "engages in sexual activity as a business." Appellant's argument is that this change in phraseology reflects an intention to make it a crime only to engage in sexual activity as a business, as distinguished from offering or agreeing to do so. However, we have not found this argument persuasive.

The commentary to both Model Penal Code drafts of the prostitution section shows that the gravamen of the offense is not the sexual activity itself but the business of engaging in such activity for hire. The Comment to the Tentative Draft section 207.12 precludes application to promiscuous persons and states that the section is only directed against professional prostitutes. The Comment reads as follows:

3. *Hire; Promiscuity Without Hire Not Criminal.* There is general agreement among the states in proscrib-

ing sexual activity for hire, but there is substantial disagreement as to whether prostitution should be defined to include promiscuous intercourse whether or not for hire.

Section 207.12 is confined to sexual activity "for hire." Among the reasons for undertaking to repress prostitution, the danger of spreading disease is the only one applicable to non–commercial promiscuity. Even on this score, non–commercial "promiscuity" appears to be less dangerous than commercial prostitution. Non–commercial prostitution involves indiscriminate acceptance of new sexual partners from time to time, but not intercourse with dozens of strangers daily. In any event, the health menace involved in amateur promiscuity seems to call for educational and medical remedies rather than penal law. The more serious dangers of professional vice are absent: necessity and means to corrupt law enforcement; incentive to coerce and exploit women; maintenance of criminal organizations and parasitic elements living on the proceeds of prostitution and therefore committed to promote the activity by finding new customers and new women to serve them.

It should be noted also that a law punishing promiscuous, but non–commercial, sex activity would reach all males who seek sexual gratification indiscriminately, whether with professional prostitutes or amateur partners. This would involve contradiction of our policies on illicit extramarital relations generally—see Comment on Section 207.1—and on patronizing prostitutes—see Comment 8 below.

A case might be made for limiting the offense of prostitution to "promiscuous" sexual activity for hire. Requiring promiscuity as well as hire would, for example, bar prosecution of a mistress who is supported by her lover. Such situations fall somewhat outside the target evils of our Section, but the "hire" requirement itself is probably a sufficient safeguard, since the lover's financial contributions in these relationships are more likely to be

interpreted as gifts out of general affection rather than "hire" for sexual activity. Another effect of requiring promiscuity as well as hire would be to exclude cases where a girl not generally engaged in commercial activity nevertheless consents to have intercourse on a particular occasion in exchange for a promised reward. Again this seems to fall outside the defined objective of the present Section and to impinge on our decision elsewhere that criminal law is not a useful or safe form of regulating private illicit sexual relations. Yet, acceptance of hire on one occasion is some indication of willingness to commercialize promiscuously. It would appear to place a disproportionate burden on prosecution to require proof of promiscuity in every ordinary prostitution case where hire is shown, merely to exclude possible prosecution in certain cases of meretricious relations which, in any event, are unlikely to come to the attention of authorities.

Comment to Tentative Draft No. 9, § 207.12, pp. 174–76 (footnotes omitted).

The Comment to section 251.2 states:

Subsection (1) has been revised to meet in part the views of those who are skeptical of the propriety or utility of using the criminal law to repress individual immorality. It no longer purports to reach every engagement in sexual activity for hire. Thus, the possibility of applying the Section to the private mistress whose lover contributes to her support is now excluded. But we adhere, in paragraph (a), to the position of the previous draft that the professional prostitution is criminal even if carried on in private. Paragraph (b) adopts the idea that prostitution is also to be repressed when it manifests itself in public solicitation, which may be an annoyance to passersby and an outrage to the moral sensibilities of a large part of the public.

In view of these comments, two probably obvious observations may be made. First, the focus of section 207.12

was not promiscuousness and its moral implications, or the sex act itself, but instead was the business of engaging in sex for a fee. Second, although in drafting section 251.2 some changes were made to section 207.12, these changes were not intended to effect any change in focus, which remained the business of engaging in sex for a fee; at most, the changes were intended to eliminate any possibility, however slight, that a private mistress would be convicted of prostitution. Nothing in the Comments lends support to appellant's argument that the changes made to section 207.-12 were intended to have the effect of narrowing the focus of the section to include only actually engaging in sex for a fee as distinguished from only offering or agreeing to do so. To the contrary: The phrase in section 251.2, "engages in sexual activity as a business," was evidently intended as no more than a restatement of the phrase in section 207.12, "engages, or offers or agrees to engage in sexual activity for hire." When "as a business" is substituted for "for hire," the reference to "offers or agrees to engage" becomes superfluous; one cannot engage in a "business" without offering or agreeing to sell one's product or services. Thus, in a prosecution under section 251.2—or section 5902(a)—it need not be shown that the defendant engaged in sexual intercourse with any particular person, such as the complaining witness; what must be shown is that the defendant engaged in "sexual activity as a business," either as "an inmate of a house of prostitution" or "otherwise."

A considerations of section 5902(e) provides further support for this reading. That section provides that "[a] person commits a summary offense if he hires a prostitute to engage in sexual activity with him." It would be absurd to hold that the patron may be convicted under section 5902(e) after hiring the prostitute but before the sex act occurs, while the prostitute, even though engaging in the business, cannot be convicted under section 5902(a)(1) until after the sex act has occurred. We are not to construe a statute to achieve an absurd result. *See* 1 Pa.C.S. § 1922(1); *Westing-*

108

*house Broadcasting Co., Inc. v. Commonwealth Bd. of Finance and Revenue,* 14 Pa.Cmwlth. 59, 321 A.2d 413 (1974).

The question, therefore, is whether the evidence was sufficient to demonstrate beyond a reasonable doubt that appellant was engaging in sexual activity as a business, either as an inmate of a house of prostitution or otherwise, and not whether she engaged in intercourse with the officer. We hold that it was sufficient. The evidence that appellant offered to engage in specific sexual acts for a price, used words commonly used by prostitutes to describe those acts, accepted the money offered for one of those acts, and undressed in preparation for it, was sufficient to prove that she was then engaging "in sexual activity as a business." There was no need for the officer to participate in the sexual activity to the extent of having intercourse with appellant.

3

Appellant's argument that the lower court erred in failing to hold that she was entrapped as a matter of law is also without merit.

Section 313 of the Crimes Code provides:

**§ 313.  Entrapment**

(a) General rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

18 Pa.C.S. § 313.

"This rule calls for an objective evaluation of police conduct to determine whether there is a substantial risk that the offense will be committed by persons innocently disposed. Thus . . . it must be shown that the police conduct would have induced an innocent person to commit the crime." *Commonwealth v. Stokes*, 264 Pa.Super. 515, 518, 400 A.2d 204, 206 (1979). *See Commonwealth v. Jones*, 242 Pa.Super. 303, 363 A.2d 1281 (1976); Toll, Pennsylvania Crimes Code Annotated, p. 146 (1974) (Reporter's Comment: "This section overrules the predisposition test").

While appellant has presented a lengthy discussion of the history of the defense of entrapment, the objective test as opposed to the predisposition test, and the burden of proof, she has not persuaded us that the lower court erred in not finding entrapment as a matter of law. At most the evidence shows that Officer Fredericks provided appellant with an opportunity to commit the crime; he did not importune her to commit it, and his behaviour was not such as would induce an innocent person to act as a prostitute. *See* factual situations presented in *Commonwealth v. Stokes, supra,* and *Commonwealth v. Lee,* 266 Pa.Super. 218, 396 A.2d 724 (1978); and *cf. State v. Morris,* 272 N.W.2d 35 (Minn. Supreme Court 1978).

Affirmed.[10]

10. On June 23, 1980, while the present opinion was being written, appellant filed a petition for reargument, citing the Supreme Court's decision in *Commonwealth v. Bonadio,* 490 Pa. 91, 415 A.2d 47 (1980). In that case the Supreme Court struck down a statute prohibiting voluntary deviate sexual intercourse, holding that the statute violated the guarantee of equal protection of the laws because it impermissibly discriminated between married and unmarried persons. Appellant has not raised a similar equal protection argument on this appeal, and the only equal protection argument she has raised has been waived. Moreover, while certain statements in Mr. Justice FLAHERTY's opinion might be read as critical of statutes making prostitution a crime, that portion of his opinion was not joined by any other Justice, and we do not believe that the decision in *Bonadio* in any way affects the legality of the conviction for prostitution in this case. Since *Bonadio* thus provides no basis for reargument of this case, the petition for reargument is denied.