432 A.2d 1103

**COMMONWEALTH of Pennsylvania**

v.

**Guy Eugene FERGUSON, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1980.

Filed July 24, 1981.

---

Frank J. Marcone, Media, for appellant.

David E. Fritchey, Deputy District Attorney, Media, for Commonwealth, appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellant was charged with several counts of possession and delivery of cocaine, methamphetamine, and marijuana. At appellant's jury trial the Commonwealth presented evidence that on three separate occasions appellant had sold the above-mentioned drugs to an undercover officer of the Pennsylvania State Police. Appellant admitted making the sales, but attempted to show that he had been entrapped. Specifically, appellant introduced evidence that his father had been in jail at the time of the sales, and that his father's paramour, working in concert with the State Police, had allegedly induced appellant to sell the drugs to raise enough money to secure his father's release on bail. Appellant was convicted of three counts of possession and three counts of possessing with intent to deliver and delivery of a controlled substance. Appellant has filed this direct appeal alleging the trial court committed six errors, which he claims entitles him to a new trial.

I. Appellant's main contention is that the trial judge usurped the function of the jury in his charge on entrapment. The lower court instructed the jury generally on entrapment and included in its instructions the following statement: "Now, does it make any difference that your father's in jail and you were asked to do something illegal and as a result he would get help? That's not enough. A

lot of people have that situation but I am going to leave it for you." (N.T. Jury Charge p. 2). The appellant extracts these few comments out of the charge as a whole and claims the court improperly interfered with the jury.

We must review the court's charge to the jury in its entirety. *Commonwealth v. Tolassi,* 489 Pa. 41, 413 A.2d 1003 (1980); *Commonwealth v. Woodward,* 483 Pa. 1, 394 A.2d 508 (1978); and *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974). In at least ten different points in the charge the court clearly told the jury that it, the jury, exclusively, must decide appellant's guilt or innocence. (N.T. Jury Charge, pp. 2, 3, 11, 12, 14, 15, 16 and 23). The trial judge commenced his charge and completed it by informing the jury that it was solely responsible for adjudging the appellant. In the midst of this the court made one reference to one of the pertinent issues and expressed its opinion on the issue.

■ A court may clarify the issues that are before the jury. *Commonwealth v. Walker,* 459 Pa. 12, 326 A.2d 311 (1974); *Commonwealth v. Vernille,* 275 Pa.Super. 263, 418 A.2d 713 (1980); and *Commonwealth v. Cameron,* 247 Pa.Super. 435, 372 A.2d 904 (1977). We believe the court's question: "Now, does it make any difference that your father's in jail and you were asked to do something illegal and he would get help?", was a concise, accurate and fair phrasing of the entrapment issue faced by the jury.

■ A court may express its opinion on the evidence so long as it emphasizes that its opinion is only the opinion of the court and is not binding upon the jurors who are the sole judges of the defendant's guilt. *Commonwealth v. Austin,* 274 Pa.Super. 1, 417 A.2d 1220 (1980); *Commonwealth v. Dougherty,* 259 Pa.Super. 88, 393 A.2d 730 (1978). We realize that the line between permissible and impermissible comment is not clearly defined. However, we believe the court did not exceed its permissible limits.

A judge who at the end of the formal charge stated that in his opinion the defendant if guilty at all was guilty of

first degree murder was held to have interfered with the jury's duty. *Commonwealth v. Goins*, 457 Pa. 594, 321 A.2d 913 (1974). The judicial statement that "I think it would be a miscarriage of justice to find the defendant not guilty," was held to be impermissible. *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972). While in *Commonwealth v. Ott*, 417 Pa. 269, 207 A.2d 874 (1965) the Supreme Court held it impermissible for a judge to tell the jury that he had a duty to tell them that in his opinion the defendant was guilty. In *Commonwealth v. Austin, supra*, this court held that the lower court erred in instructing the jury that the weapon "certainly is an offensive one", when "offensiveness" was one of the elements of the crime charged. There are numerous cases dealing with this issue; the four above are representative of cases where the reviewing court found the comment to be reversible error.

Cases where the comment was held permissible include *Commonwealth v. Woodward*, 483 Pa. 1, 394 A.2d 508 (1978) where the court in charging on the voluntariness of the defendant's statement, mentioned that the court had found it to be voluntary in determining its admissibility. The court however clearly stated that it was the jury's obligation to determine the voluntariness of the statements. The Supreme Court found it "inconceivable" that the charge as a whole had interfered with the jury's function. Similarly, the Supreme Court in *Commonwealth v. Walker*, 459 Pa. 12, 326 A.2d 311 (1974) found that the trial court had not exceeded its bounds when it stated in the charge "now if you believe beyond a reasonable doubt that the defendant shot and killed the victim under the circumstances *as the Commonwealth has proved to you.*" (emphasis added by Supreme Court) and held that this statement simply indicated what the Commonwealth's evidence if believed tended to establish.

We find the present case to be more in line with *Walker* and *Woodward*. The court succinctly stated the issue before the jury and then made a passing comment as to its opinion, immediately followed by a statement that it was for the

jury to determine. The court continually, throughout its charge noted that the jury was the sole factfinder. Accordingly, we find no reversible error; even if the comment: "That's not enough", was improper, it clearly was harmless beyond a reasonable doubt when considered in the context of the whole charge.

■ II. Appellant's second assignment of error is that the lower court incorrectly instructed the jury on the definition of reasonable doubt. The court defined reasonable doubt as that doubt which "would cause you to hesitate and prevent you and restrain you from acting". (N.T. Jury Charge, p. 8). The court repeated the above definition one time. The court in expounding further on reasonable doubt limited the definition to "cause you to hesitate". The appellant argues that the earlier use of the word "prevent" instead of just hesitate requires us to grant a new trial. The identical issue was before this court in *Commonwealth v. Middleton*, 260 Pa.Super. 571, 578, 394 A.2d 1293, 1297 (1978). There we found the argument to be "a non sequitur and is totally meritless". We agree, and hold likewise here.

■ III. The next allegation of error is that the court should have permitted defense counsel to comment to the jury on the inference that may be drawn from a party's failure to call a favorable witness. Appellant claims that his father's paramour whom the state police used as an intermediary in the drug transactions was unavailable to testify on his behalf because she had entered into a plea bargain with the Commonwealth. Appellant does not claim that he was unable to subpoena her or that he did not know her identity or whereabouts or that the Commonwealth prevented him from calling her. A witness cannot be deemed unavailable unless the party has exerted a good faith effort to produce him or her. *Commonwealth v. Stasko*, 471 Pa. 373, 370 A.2d 350 (1977). Appellant cannot now claim that a known witness was unavailable merely because she had entered into a plea bargain. *See* also *Commonwealth v. Brown*, 267 Pa.Super. 530, 407 A.2d 36 (1979).

170

 IV. The fourth issue appellant raises is that the trial court "berrated [sic] counsel" in front of the jury when counsel attempted to get the appellant to answer questions more calmly and clearly.[1] It is argued that this demonstrated the court's bias against appellant. However, not every indication of ill-will, rudeness or impatience directed at counsel will justify a reversal of the trial courts.

While we do not condone a display of impatience [or a berating] by a trial judge, even where he may have been provoked by counsel's dilatory tactics, we recognize that judges are also subject to the failings of human beings and cannot be expected to be devoid of emotion in the trying or vexing situations they may be called upon to confront. Here, we are satisfied that these isolated comments, which were directed solely to counsel and not his client, did not reach the level where it could be reasonably concluded that appellant was deprived of a fair and impartial trial. Appellant complains of no extended, aggressive or partisan examination of himself, *Commonwealth v. Williams*, 468 Pa. 453, 364 A.2d 281 (1976); *Commonwealth v. McCoy*, 401 Pa. 100, 162 A.2d 636 (1960), . . . no expressions of doubt as to the credibility of a witness, *Commonwealth v. Butler*, 448 Pa. 128, 291 A.2d 89 (1972); and no independent manifestation of bias in favor of the prosecution, *Commonwealth v. Hales*, 384 Pa. 153, 119 A.2d 520 (1956); *Commonwealth v. Trunk*, 311 Pa. 555, 167 A. 333 (1933). Additionally, the court in its instructions properly charged that the jury was the sole judge of the facts and the arbiter of the truth. Under these circumstances we cannot say that the remarks of the court so tainted the proceeding as to require a reversal of the judgment of sentence. See *Commonwealth v. Myma*, [278 Pa. 505, 123 A. 486 (1924) ].

*Commonwealth v. England*, 474 Pa. 1, 17, 375 A.2d 1292, 1300 (1977).

1. The notes of testimony of the actual trial have not been transcribed due to appellant's apparent failure to abide by the local rules in timely fashion in requesting such transcripts. To conserve judicial resources we here assumed that appellant's factual allegations are true.

In the circumstances of this case, the court's admonishment of counsel did not so taint the proceedings as to require us to reverse here. This was an isolated incident, and the court adequately charged the jury to overlook comments made either by the court or counsel.[2]

V & VI Appellant's fifth and sixth claims of error are that the court erred in preventing defense counsel, in closing argument, from commenting on appellant's lack of profit motive and lack of prior history of drug dealing. It is appellant's contention that these two factors go to his motivation, which should have been considered in deciding upon his entrapment defense. Appellant argues that the court improperly instructed the jury that profit and prior drug dealings do not enter into the consideration of the entrapment issue.

In *Commonwealth v. Clawson*, 250 Pa.Super. 422, 378 A.2d 1008 (1977) (plurality opinion by Spaeth, J.) this court held that the lower court erred in failing to instruct the jury on entrapment. If the jury had been so instructed then it may have found that evidence of no previous drug trafficking and the lack of a profit motive supported a defense of entrapment. In this current appeal the jury was instructed as to the defense of entrapment, and it was free to consider appellant's motivation. The question however is whether a court should allow counsel to comment on the lack of profit and the lack of prior dealings and whether the court may instruct the jury to disregard counsel's comments. The actual instructions in this case were as follows: "You don't have to be a dealer. You can procure drugs one time and you would be guilty if you didn't come within the entrapment provision. So, dealing has nothing to do with it." (N.T. Jury Charge, p. 15). "[P]rofit has nothing to do with it. He's guilty if he delivered. . . . The law doesn't talk

---

2. While we do not condone such judicial behavior before the jury, we must note in passing that defense counsel was subjected to contempt proceedings for his earlier handling of this case; apparently counsel had also been cited for contempt on numerous prior occasions in Delaware County.

about profit. He's not guilty if he was entrapped." (N.T. Jury Charge, p. 16).

The lower court was in the difficult position where it had to prevent misleading and incorrect instructions on delivery while at the same time properly instruct on the entrapment defense. The court properly prevented derivation from its definition of delivery; a defendant's profit motive or lack of prior experience are irrelevant. See *Commonwealth v. Webb*, 254 Pa.Super. 429, 386 A.2d 25 (1978) (opinion in support of affirmance); and *Commonwealth v. Cameron, supra.* In this situation we do not believe appellant suffered reversible harm. His alleged motivation was that the profits realized were to be used to meet his father's bail; that was his claimed sole purpose for becoming involved. The court did not deny counsel the opportunity to comment on his express desire to assist his father. The court when cautioning the jury to not consider the profit motive and prior dealings in regards to delivery then directed the jury back to the entrapment defense. So, in this situation we do not believe the trial court erred in its instruction to the jury.

Judgment of sentence is affirmed.[3]

WICKERSHAM, J., files a concurring statement.

HOFFMAN, J., files a dissenting opinion.

Concurring Statement by WICKERSHAM, Judge:

I join in the Majority Opinion of Judge Van der Voort.

As I view the record in this case, the trial judge, the Honorable Joseph W. de Furia, did not express his opinion on guilt or innocence, nor did he give his views on the credibility of a particular witness. What Judge de Furia did do was tell the jury that they should not be confused by

3. The Dissent expresses concern over the court's general instructions on entrapment. However, appellant has neither preserved such issue for appeal by taking an exception to the court's charge, or by claiming such in post-verdict motions, nor has he questioned such on this appeal.

defendant's sympathetic motive for committing a crime. As the judge said, "I am going to leave it for you." The case was fairly tried and the defendant properly convicted of having sold cocaine and other drugs to Pennsylvania State Police Officers on several occasions in the Fall of 1978 on a McDonald's parking lot in Haverford Township, Pennsylvania.

HOFFMAN, Judge, dissenting:

Appellant contends, *inter alia*, that the lower court deprived him of a fair trial by expressing to the jury its opinion that the evidence was insufficient to establish the defense of entrapment. I agree and would therefore reverse the judgment of sentence and remand for a new trial. Accordingly, I dissent.[1]

In order to properly evaluate appellant's claim, it is necessary first to consider briefly the substance of our law of entrapment. Section 313 of the Crimes Code provides, in relevant part:

(a) *General rule.*—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by . . . :

. . . .

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

18 Pa.C.S.A. § 313(a). Pursuant to this statute, the relevant inquiry when examining a defendant's evidence of entrapment is whether the particular methods used by the police and/or their agents created a substantial risk that the offense charged would be committed by innocently disposed

---

1. Since I would reverse on the basis of the lower court's improper expression of opinion, I do not reach any of the other issues which appellant has presented.

persons. *Commonwealth v. Danko,* 281 Pa.Super. 97, 421 A.2d 1165 (1980); *Commonwealth v. Stokes,* 264 Pa.Super. 515, 400 A.2d 204 (1979); *Commonwealth v. Manley,* 252 Pa.Super. 77, 380 A.2d 1290 (1977); *Commonwealth v. Loccisano,* 243 Pa.Super. 522, 366 A.2d 276 (1976); *Commonwealth v. Jones,* 242 Pa.Super. 303, 363 A.2d 1281 (1976). Accordingly, the test for determining whether entrapment has occurred is an objective one, focusing on the nature of police conduct rather than the predisposition of the defendant to commit the crime with which he has been charged. *Commonwealth v. Danko, supra; Commonwealth v. Stokes, supra; Commonwealth v. Manley, supra; Commonwealth v. Kishbach,* 247 Pa.Super. 557, 565, 373 A.2d 118, 122 (1976) (HOFFMAN, J., dissenting); *Commonwealth v. Jones, supra.*[2] "The objective test of entrapment does not affect the guilt of the accused; guilt is conceded. The defense allows an otherwise guilty defendant to go unpunished because our legislature has determined that seriously objectionable police conduct may not be tolerated." *Commonwealth v. Jones, supra* 242 Pa.Super. at 314, 363 A.2d at 1286.[3] The determi-

---

**2.** *But see Commonwealth v. Lee,* 262 Pa.Super. 218, 396 A.2d 724 (1978); *Commonwealth v. Clawson,* 250 Pa.Super. 422, 378 A.2d 1008 (1977) (plurality opinion) (purporting to apply 18 Pa.C.S.A. § 313(a), but considering criminal predisposition of defendant).

**3.** This marks a significant departure from prior Pennsylvania law. Prior to the adoption of the 1972 Crimes Code, the Pennsylvania test for entrapment was ". . . whether the criminal design was created by the officer or whether the officer merely afforded an opportunity for the commission of a crime by the person already disposed to commit the crime . . ." *Commonwealth v. Harrison,* 228 Pa.Super. 42, 44, 323 A.2d 848, 849 (1974). See also *Commonwealth v. Berrigan,* 234 Pa.Super. 370, 343 A.2d 355 (1975); *Commonwealth v. Klein,* 222 Pa.Super. 409, 294 A.2d 815 (1972); *Commonwealth v. Conway,* 196 Pa.Super. 97, 173 A.2d 776, (1961). This test was derived from the majority opinions in *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), which focused on the predisposition of the accused to commit the crime. *See also United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). The present codification of entrapment finds its origin in Mr. Justice FRANKFURTER'S concurring opinion in *Sherman:* "This does not mean that the police may not act so as to detect those engaged in criminal conduct and ready and willing to commit further crimes should the occasion

nation of whether particular police conduct constitutes entrapment is to be made by the jury, unless the evidence clearly establishes entrapment as a matter of law. *Commonwealth v. Manley, supra; Commonwealth v. Berrigan,* 234 Pa.Super. 370, 343 A.2d 355 (1975). In order to successfully invoke the defense, the defendant must prove "by a preponderance of evidence that his conduct occurred in response to an entrapment." 18 Pa.C.S.A. § 313(b).

As the opinion of the majority indicates, appellant introduced evidence to support his claim that he had been entrapped into committing the crimes with which he was charged. This evidence did not clearly establish entrapment as a matter of law, and thus the issue was for the jury to resolve. *Commonwealth v. Manley, supra; Commonwealth v. Berrigan, supra.* It is in this context that we must consider appellant's present claim. The lower court included in its instructions on entrapment the following statement: "Now, does it make any difference that your father's in jail and you were asked to do something illegal and as a result he would get help? *That's not enough.* A lot of people have that situation but I am going to leave it for you." (N.T. Jury Charge 14; emphasis added.) Appellant contends that this statement unduly influenced the jury to find his evidence insufficient to establish entrapment, and I agree.[4] It

arise. Such indeed is their obligation. It does mean that in holding out inducements they should act in such a manner as is likely to induce to the commission of crime only these persons and not others who would normally avoid crime . . . . This test shifts attention from the record and predisposition of the particular defendants to the conduct of the police and the likelihood, objectively considered, that it would entrap only those ready and willing to commit crime." 356 U.S. at 383–384, 78 S.Ct. at 826.
*Commonwealth v. Jones, supra* 242 Pa.Super. at 310–11, 363 A.2d at 1284–85 (footnotes omitted). For additional cases applying prior Pennsylvania law on entrapment, *see Commonwealth v. Herron,* 475 Pa. 461, 380 A.2d 1228 (1977); *Commonwealth v. Loccisano,* 243 Pa.Super. 522, 366 A.2d 276 (1976); *Commonwealth v. Wright,* 235 Pa.Super. 289, 340 A.2d 544 (1975); *Commonwealth v. Mott,* 234 Pa.Super. 52, 334 A.2d 771 (1975).

4. The Commonwealth argues that the statement which appellant has challenged is "a mere fragment taken out of context," and that viewed in their entirety the trial judge's instructions on entrapment

is settled that "[t]he trial judge is free to express his opinion on some of the evidence as long as the jury is left free to act upon its own view of the evidence. *Commonwealth v. Ott,* 417 Pa. 269, 207 A.2d 874 (1965); *Commonwealth v. Fiorini,* 202 Pa.Super. 88, 195 A.2d 119 (1963)." *Commonwealth v. Dougherty,* 259 Pa.Super. 88, 92, 393 A.2d 730, 732 (1978). *See also Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217 (1976) (plurality opinion); *Commonwealth v. Russell,* 459 Pa. 1, 326 A.2d 303 (1974); *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974); *Commonwealth v. Austin,* 274 Pa.Super. 1, 417 A.2d 1220 (1980). Nonetheless, the power of the trial judge to comment on the evidence is not unlimited. Our cases have long recognized that

> [t]he judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box . . . . To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence.

*Commonwealth v. Myma,* 278 Pa. 505, 508, 123 A. 486, 487 (1924). *See also Commonwealth v. McNeill,* 462 Pa. 438, 341 A.2d 463 (1975) (plurality opinion); *Commonwealth v. Goins,* 457 Pa. 594, 321 A.2d 913 (1974) (Opinion of NIX, J.); *Commonwealth v. Butler,* 448 Pa. 128, 291 A.2d 89 (1972);

were "a correct and unbiased statement of the law." Brief for the Commonwealth at 6. Although appellant has not raised the point, and thus I do not base my opinion on it, I note that contrary to the Commonwealth's assertion, the instructions did not correctly state the law of entrapment. The trial judge repeatedly instructed the jurors that they had to determine whether appellant was predisposed to commit the crimes charged (*e. g.,* "the issue is was this defendant ready to commit such an act or was he persuaded or induced by the promises made by this woman?" N.T. Jury Charge 14). As noted above, predisposition of the defendant is irrelevant under the current law of entrapment in this Commonwealth. The sole question before the jury is whether, objectively viewed, the particular methods employed by the police were likely to induce an innocently disposed person to commit the crime(s) charged.

*Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972).[5]

Recognizing the enormous influence which the trial judge necessarily exerts over the jury, our Supreme Court has prescribed certain specific limitations on the power of the judge to comment on the evidence. In *Commonwealth v. Archambault, supra,* the Court held that "a trial judge may not suggest a verdict of guilty or not guilty nor directly express an opinion on the guilt or innocence of the defendant." 448 Pa. at 97, 290 A.2d at 75. Such an expression by the trial judge "invades the province of the jury," *id.,* 448 Pa. at 93, 290 A.2d at 73, and its "decisive effect" cannot be mitigated by "cautioning instructions . . . that the jury is the final arbiter of the verdict." *Id.,* 448 Pa. at 96, 290 A.2d at 75. "Just as a trial judge is not permitted to indicate to the jury his views on the verdict that they should reach in a criminal case, . . . similarly he is not permitted to indicate to a jury his views on whether particular witnesses are telling the truth. *Commonwealth v. Butler, supra* 448 Pa. at 134–35, 291 A.2d at 92 (citations omitted). *See also* III American Bar Association Standards for Criminal Justice, Standard 15–3.8(a) (2d ed. 1980) ("The trial judge should not express or otherwise indicate to the jury his or her personal opinion whether the defendant is guilty or express an opinion that certain testimony is worthy or unworthy of belief.").[6]

**5.** The United States Supreme Court has stated: " 'The influence of the trial judge on the jury is necessarily and properly of great weight,' . . . and jurors are ever watchful of the words that fall from him." *Bollenbach v. United States,* 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946) (quoting *Starr v. United States,* 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841 (1894) ). Indeed,

"[e]very time the Judge moves his head, arms or body the jurors watch him. They look at his face. In the minds of the jurors, the judge is supreme. He can do no wrong. Jurors seek to avoid the displeasure of the judge. *They are reluctant to decide questions of fact contrary to what they believe the views of the judge to be.*" *Commonwealth v. Butler, supra* 448 Pa. at 134 n.1, 291 A.2d at 92 n.1 (quoting Conner, *The Trial Judge, His Facial Expressions, Gestures and General Demeanor—Their Effect on the Administration of Justice,* 6 Am.Crim.L.Q. 175, 177 (1968) ) (emphasis added).

**6.** *See* note 8 *infra.*

In *Commonwealth v. Goins, supra,* our Supreme Court was presented with a situation especially relevant to the present case. There, Goins was charged with a killing which he admitted committing, and thus the sole issue before the jury was the degree of his guilt. Goins' whole defense was designed "to persuade the jury to reduce its verdict to second degree [murder] on the theory that [he] was so intoxicated that he lacked the mental capacity to form a specific intent to kill." 457 Pa. at 599–600, 321 A.2d at 916. In its instructions to the jury, the trial judge stated, "Under the evidence in this case it is my opinion and only my opinion, which is in no wise binding upon you, that if this defendant is guilty at all, he is guilty of murder in the first degree." *Id.,* 457 Pa. at 596, 321 A.2d at 914. The jury subsequently convicted Goins of first-degree murder. On appeal four members of the Supreme Court concluded that the trial judge's expression of opinion regarding the degree of guilt had usurped the function of the jury. In the lead opinion of the Court, Justice NIX observed that "the effect of the comment was to decimate the defense's position as to the only real issue in controversy." *Id.,* 457 Pa. at 600, 321 A.2d at 916. Justice NIX went on to state:

> In a criminal case a court may not order the jury to return a verdict of guilty, regardless how overwhelming the evidence of guilt. *Similarly, the court should not be permitted to express its opinion as to the merit of the only defense offered.*
>
> . . . .
>
> Unquestionably, a comment suggesting the court's view as to the merits of an accused's sole defense is a greater intrusion upon the province of the factfinder than an expression of the court's opinion as to the credibility of a single witness. Clearly, if the latter is prohibited, the former may not be condoned.
>
> Where a collateral issue, without merit, is introduced to obscure the real questions to be decided by the jury the use of the power of comment may be appropriate. But *the mere fact that the sole issue in controversy may be*

*without impressive support in the testimony does not permit the court to urge a verdict by expressing an opinion as to its weakness.*

*Id.,* 457 Pa. at 600–01, 321 A.2d at 916–17 (emphasis added).[7] *See also Commonwealth v. McNeill, supra* (where sole defense in homicide prosecution was that defendant had been so provoked as to reduce offense from murder to voluntary manslaughter, it was reversible error for trial judge to express to jury his opinion that defendant's evidence of provocation was insufficient to warrant verdict of voluntary manslaughter).

I am convinced that the trial judge's comments in the present case were at least as damaging to appellant as those which warranted reversals in *Goins* and *McNeill.* In asserting the defense of entrapment appellant necessarily admitted having possessed and sold drugs to the undercover officer. *Commonwealth v. Jones, supra.* Thus, the sole issue remaining in the case was whether appellant had been entrapped. Regardless of how weak appellant's evidence of entrapment may have been, the issue was one entrusted to the jury for resolution. Yet, the trial judge's statement that appellant's evidence was insufficient to establish entrapment left the jury unavoidably to conclude that appellant was guilty as charged. Thus, while the trial judge did not directly tell the jury that he believed appellant was guilty, his comments, under the peculiar facts of this case, constituted just as serious an invasion of the jury's province as those proscribed by *Commonwealth v. Archambault, supra.*[8]

7. Justice NIX's opinion was joined by Justice O'BRIEN. Justice POMEROY concurred in the result without opinion. Justice ROBERTS and Justice MANDERINO would have gone further and issued a blanket prohibition against expressions by trial judges of their opinions on degree of guilt. 457 Pa. at 601, 321 A.2d at 917.

8. The practices of "directly express[ing] an opinion on ... guilt or innocence," *Commonwealth v. Archambault, supra* 448 Pa. at 97, 290 A.2d at 75, and giving "views on whether particular witnesses are telling the truth," *Commonwealth v. Butler, supra* 448 Pa. at 135, 291 A.2d at 92, are not, as Judge WICKERSHAM seems to suggest in his Concurring Statement, the only limitations on the power of the trial judge to comment on the evidence. Certainly if "a trial judge may

The majority focuses its attention on the court's question, "Now, does it make any difference that your father's in jail and you were asked to do something illegal and he would get help?", characterizing it as "a concise, accurate and fair phrasing of the entrapment issue faced by the jury." Majority Opinion at 1104. I agree entirely and observe that had the trial judge gone on to state simply that it was up to the jury to answer this question, he would have committed no error subject to our review. But no sooner had the judge asked the question than he answered it in no uncertain terms. "That's not enough," he told the jurors, effectively supplanting their judgment on the question with his. Neither his perfunctory, "but I am going to leave it for you," nor those other instructions on jury autonomy upon which the majority I believe mistakenly relies[9] could possibly have offset the "decisive effect" of his unqualified statement to the jury that appellant's evidence of entrapment was insufficient. *Commonwealth v. Archambault, supra* 448 Pa. at 96, 290 A.2d at 75. Here, as in *Goins,* "there was no reason to believe that the factfinders could not intelligently evaluate the evidence presented and under these circumstances was reversible error to attempt to sway their judgment by the expression of an opinion." 457 Pa. at 601, 321 A.2d at 917. The majority errs by failing to recognize this, and thus I am compelled to dissent.

not *suggest* a verdict of guilty or not guilty," *Commonwealth v. Archambault, supra* 448 Pa. at 97, 290 A.2d at 75 (emphasis added), then it is impermissible for a judge to resolve for the jury the only issue which stands between acquittal and conviction. *Commonwealth v. McNeill, supra; Commonwealth v. Goins, supra.*

9. The judge instructed the jurors that they were to determine the facts of the case and decide the case on the basis of those facts (N.T. Jury Charge 2, 3, 12, & 23); that they were to be guided by their own recollection of the testimony (N.T. Jury Charge 2, 3, & 15); and that they were the "exclusive judges" of credibility, as well as of the evidence (N.T. Jury Charge 11).